HERMA ALEXANDER, EXECUTRIX, ETC., RESPONDENT, v. GRIFFITH BROKERAGE COMPANY, APPELLANT.—73 S. W. (2d) 418.

Kansas City Court of Appeals. June 11, 1934.

*Winger, Reeder, Barker & Hazard* for respondent.

*L. L. Watts* and *Watson, Ess, Groner, Barnett & Whittaker* for appellant.

TRIMBLE, J.—The action herein is one brought by the widow and executrix of the last will and testament of Spencer A. Alexander, deceased, against the defendant to obtain an accounting of money collected by it on a policy of insurance issued on the life of said deceased by the Guardian Life Insurance Company of America taken out by defendant while deceased was in its employ as manager of its branch office in Kansas City, Missouri.

Defendant is a Kansas corporation authorized to do business in Missouri, having offices at Wichita, Oklahoma City and Kansas City, Missouri, and doing a general brokerage business in the field of grocery merchandising; that is, it represents various food manufacturers in different parts of the country as their broker in selling groceries for their account, to different wholesale dealers, being paid commissions on all sales made.

Each branch office is in charge of a manager who operates it as an independent unit of the business.

In November, 1929, during the lifetime of said Spencer A. Alexander, he was employed by defendant as its manager of the Kansas City branch, and on November 27, 1929, application, signed by both Alexander and the defendant Griffin Brokerage Company, was made to the above named insurance company for a policy of $5000 on the life of said Alexander, age thirty-seven years, with an "interim term premium" of $17.25 falling due on April 15th and the annual premium (of $140.20) falling due annually thereafter. Defendant was to be the beneficiary (without the right of revocation) therein; and, in an amendment to the application, Alexander agreed to "accept the policy issued;" and in a statement supplementary to said application, signed by both Alexander and the Brokerage Company, defendant Griffith Brokerage Company stated that "The applicant is connected with said beneficiary in the capacity of manager, and by reason of such connection said beneficiary has a pecuniary insurable interest in the continuance of the applicant's life," and it was also agreed therein "that if a policy be issued on such application to said applicant (in said policy referred to as the insured), said beneficiary (in said policy referred to as the owner), shall be entitled to receive any dividends declared on such policy and any cash surrender value or loan value or value in paid-up insurance which may be granted thereunder, and generally to exercise every option and enjoy every privilege and benefit under the terms of such policy without the consent of the insured," etc.

The contract or policy stated that "The Guardian Life Insurance Company of America agrees to pay the sum of Five Thousand Dollars on receipt at the Home Office of the Company of due proof of the death of Spencer A. Alexander (herein called the Insured) to the Griffith Brokerage Company, a corporation organized under the laws of the State of Kansas, its successors or assigns, herein called the Owner." The policy further stated that:

"This contract is made in consideration of premiums as follows:

"First premium of $17.25 payable on delivery hereof, being charge for initial term insurance to April 15, 1930, the date when the first regular policy year hereunder will begin; and further premiums of $140.20 payable on said date and every twelve calendar months thereafter during the continuance of this policy until the death of the Insured."

One other policy for $5000 was issued at the same time, having the same purpose, terms and conditions, except that its "regular policy year" for the payment of premiums, ran from February 15, 1930, instead of from April 15, 1930, as provided in the first policy mentioned, the proceeds of which are now involved in this suit.

The premiums on both these policies, as well as all other expenses incident thereto, were paid by the Griffith Brokerage Company. Alexander did not pay, nor was he obligated personally to pay, any

part of the premiums or expenses connected with the obtaining or carrying of these policies.

In February, 1932, Alexander was discharged from his position as manager, by defendant Griffith Brokerage Company and when the premium on said other policy fell due on February 15, 1932, it was not paid, but defendant surrendered that policy to the insurance company for its cash surrender value, presumably because Alexander was no longer employed by defendant. The premiums on the policy, the proceeds of which are in suit, had already been paid and, by reason thereof, that policy was in force to April 15, 1932, and nothing was necessary to be done about it.

On April 12, 1932, or three days before the premium on it fell due, Alexander died by his own hand. The remaining policy still being in force, defendant as beneficiary made due proof of death and the insurance company paid the sum of $5000 and that sum was credited to the profit and loss account of the Kansas City Branch of which Alexander had been the manager.

The defendant Griffith Brokerage Company kept a "loan account" separate from the employees' salary and expense account; and from this, defendant from time to time made loans to its various employees, including its manager, to be repaid either from their pay or from them individually. Sometimes the account would show a balance in favor of the employee and again it would show, on account of loans made, a balance in favor of the company; interest on their balances would be charged against whomever the balance was against.

On November 26, 1929, defendant collected similar business insurance on a policy held by it on the life of Ronayne, Alexander's predecessor as Kansas City manager, Ronayne having died. The Wichita office received half of said insurance (pursuant to a special agreement) and the other half was credited to the profit and loss account of the Kansas City Branch and divided among the Kansas City employees. On November 29, 1929, Alexander obtained an advance loan of $1000 from the company, and on December 31, 1929, his loan account was credited with his proportionate share of the Ronayne insurance and at that time he received from the company as a further credit on his account the sum of $978.08 as his percentage of the earnings of the Kansas City Branch for the year 1929. From and after December 3, 1929, Alexander's account was credited with various sums and he was charged with various additional loans, so that at the time he was discharged in February, 1932, though his salary and expense account was square, his loan account showed an indebtedness of $1842.69 on which the company was charging him six per cent interest and continued to so charge him up to the time of his death, April 12, 1932. On May 16, 1932, defendant filed in the Probate Court of Jackson County, Missouri, its claim against his estate for said indebtedness; and on June 27, 1932, said probate

court allowed the claim, with interest, amounting in all to $1874.82. The estate appealed to the circuit court where the probate court judgment was affirmed, and became final, as no further appeal was taken. It will be observed that at the time one of the policies was issued, Alexander's loan account showed an indebtedness to the company of $1000 although by reason of profits and by reason of his share of the Ronayne insurance not at that time entered on the books, the company was in fact indebted to Alexander when the insurance was issued though afterward and at the time he died, Alexander was indebted to the company.

The case was submitted on plaintiff's third amended petition, which, after alleging Alexander's death on April 12, 1932, stated that plaintiff was his executrix, and set forth the organization, status and authority of defendant to do business in this State, and went on to state that said Spencer A. Alexander was on or about the — day of November, 1929, employed by defendant in the capacity of a salesman in the Kansas City branch office and continued in the employ of said defendant in such capacity until February 13, 1932, when he was discharged;

That at or about the time said Alexander was employed, he became indebted to defendant in the sum of $1000, and thereafter—

"At various times during the term of said employment, the dates of which are unknown to plaintiff, said Spencer A. Alexander became indebted to defendant in further sums, and paid certain amounts and became entitled to certain credits, in form of commissions, bonuses, etc., on account of his said indebtedness to defendant, the amounts of all of which said further indebtedness, and said payments and credits, are unknown to plaintiff;"

That—

"At or about the time said Spencer A. Alexander was employed by defendant and became indebted to defendant in the initial sum of $1,000 as aforesaid, the defendant, with the consent of said Spencer A. Alexander, applied for and obtained from The Guardian Life Insurance Company of America, a policy of insurance upon the life of Spencer A. Alexander in the amount of five thousand dollars ($5,000) payable to defendant as the beneficiary named therein, whereby the defendant pretended to insure itself against the loss of a purported interest in the continuance of the life of said Spencer A. Alexander in the capacity of manager of defendant's branch office at Kansas City."

That—

"Spencer A. Alexander was not in fact the manager of defendant's business, but was simply the head salesman of defendant's branch sales office at Kansas City, Missouri, having a few salesmen working under him, and was at all times subject to the control and direction of defendant's managing officers, and the success or failure of de-

fendant's business was in no sense dependent upon the ability or conduct of said Spencer A. Alexander as manager thereof, but the sole and only insurable interest defendant had in the life of said Spencer A. Alexander, at the date of the issuance said policy of insurance or at any time while the same was in force, was as creditor of said Spencer A. Alexander, as aforesaid; and plaintiff, therefore, avers that the defendant, by said policy of insurance, insured its interest in the life of said Spencer A. Alexander as creditor.''

That—

''Defendant paid all premiums on said policy of insurance, and the same remained in full force and effect, and matured at the death of said Spencer A. Alexander, whereupon the defendant collected and received from said insurance company the full amount of said policy, the sum of $5,000, aforesaid. The defendant, notwithstanding it is only entitled to the proceeds of said policy of insurance to the extent of the indebtedness due it as creditor of said Spencer A. Alexander, and/or the amounts advanced for premiums on said policy, has appropriated the whole sum of $5,000 so collected on said policy as aforesaid, and now withholds the same and every part thereof from, and has failed and now refuses to pay over the same, or any part thereof, to plaintiff, and has failed and now refuses to account for and to pay over to plaintiff the said sum of money so collected, less the amount of the indebtedness of said Spencer A. Alexander to defendant and the defendant's costs and expenses in maintaining said policy of insurance, although demanded by plaintiff.''

The petition further alleged the filing of a claim by defendant against the estate of said Alexander, deceased, in the Probate Court of Jackson County in the sum of $1858.82 which was allowed and an appeal taken to the Circuit Court of Jackson County, ''and said appeal is now pending;''

That—

''Said Griffith Brokerage Company, Inc., has been paid the amount of the said claim against the said estate of Spencer A. Alexander, deceased, in full out of the proceeds of the aforesaid insurance collected and now held by said defendant herein; that to permit said Griffith Brokerage Company, Inc., to pursue said claim against said estate, and participate in the distribution of said estate, will result in payment or partial payment depending upon the extent of distribution to creditors in said estate of a claim upon which said Griffith Brokerage Company, Inc., has already been paid in full, as aforesaid. Plaintiff further states that she could not raise such payment as a defense in the said probate court for the reason that said court has no jurisdiction to compel said Griffith Brokerage Company, Inc., to apply out of the proceeds of said issuance sufficient thereof to satisfy the said claim of Griffith Brokerage Company, Inc., and to compel said Griffith Brokerage Company to account to this plaintiff

for the balance of the proceeds of said insurance; neither can this plaintiff raise the said defense in the said Circuit Court of Jackson County where said claim in said estate is now pending on appeal for the reason that the jurisdiction of said Circuit Court of Jackson County is no broader upon said matter than was the jurisdiction of said probate court; furthermore the said defense cannot be raised in said circuit court for the reason that it was not and could not have been raised in the said probate court.''

That—

''If said Griffith Brokerage Company, Inc., be permitted to prosecute the said claim against said estate to final judgment and participate in distribution in the said estate of Spencer A. Alexander, deceased, and if plaintiff should prevail in this case and thereby become entitled to an accounting for the excess of the proceeds of said insurance over and above the amount of the said indebtedness referred to in this petition, it would then be necessary for this plaintiff as executrix to institute another suit against said Griffith Brokerage Company, Inc., to recover the amount of distribution received by said company out of the said estate of Spencer A. Alexander, deceased.''

That—

''By reason of the foregoing she has no adequate remedy at law, and that unless this court issues its injunction against further proceedings in the aforesaid suit at law of Griffith Brokerage Company, Inc., against this plaintiff as executrix of said estate, a multiplicity of suits will ensue.

''Wherefore, plaintiff prays that an accounting may be had between plaintiff and defendant, whereby the court shall cause the defendant to render plaintiff a strict account of the moneys collected by defendant on the policy of insurance aforesaid, and of all indebtedness due defendant from said Spencer A. Alexander at the date of his death, and of defendant's costs and expenses in maintaining said insurance, and that the court ascertain the status of such account; and for a decree herein in favor of plaintiff and against defendant for the net proceeds of said policy of insurance as so found and ascertained, after deducting such indebtedness, costs and expenses, and that plaintiff have judgment against the defendant therefor.''

The answer admitted the death of Alexander on the day alleged; that plaintiff is his executrix and that defendant is organized and doing business as alleged, having an office in Kansas City as alleged; that Alexander was employed by defendant and continued in its employ until discharged as stated; and said answer further set up that—

''At or about the time the said Spencer A. Alexander was employed by the defendant, he became indebted to defendant in the sum of $1,000, and that thereafter, and at various times during

the term of said employment, said Spencer A. Alexander became indebted to defendant in further sums, and paid certain amounts and became entitled to certain credits in the form of commissions, bonuses, etc., on account of his indebtedness to defendant; that at or about the time said Spencer A. Alexander was employed by defendant, the defendant applied for and obtained from The Guardian Life Insurance Company of America a policy of insurance on the life of said Spencer A. Alexander in the sum of $5,000, payable to defendant as the beneficiary named therein, whereby the defendant insured itself against the loss of an interest in the continuance of the life of the said Spencer A. Alexander in the capacity of manager of defendant's branch office at Kansas City; that defendant paid all premiums on said policy of insurance and that the same remained in full force and effect and matured at the death of said Spencer A. Alexander, and that the defendant collected and received from said insurance company the full amount of said policy, the sum of $5,000 aforesaid, but denies each and every other allegation in said third amended petition contained.''

The plaintiff's reply was a general denial and a renewal of her prayer.

The suit, being brought as one in equity, was thus tried before the court and a judgment was rendered stating that the court found the issues for plaintiff and that she is entitled to the accounting prayed for and ordered such accounting; that she is entitled to an accounting from defendant of $5000 collected by defendant from the Guardian Life Insurance Company on the twenty-third of April, 1932, on a policy of insurance upon the life of Spencer A. Alexander, that defendant paid certain enumerated sums as premiums to maintain said policy, for which, with interest until April 23, 1932, defendant was entitled to take credit on said accounting, and that the net amount to which plaintiff was entitled to have from defendant is $4671; thereupon the court rendered judgment that plaintiff recover said $4671 with costs and have execution.

The defendant has duly appealed. The term of the trial judge, JOHN R. JAMES, having expired on December 31, 1932, and his successor, Judge DANIEL E. BIRD, having qualified and taken office on January 2, 1932, and being judge at the time the bill of exceptions was presented, the same was signed by Judge BIRD as successor to Judge JAMES, and duly filed.

The sum and substance of plaintiff's testimony is that Spencer A. Alexander, her husband to whom she was married in April, 1929, was at that time employed by defendant in the capacity of salesman but in November, 1929, upon the death of Mr. Ronayne, the former manager, her husband took on the work of ''manager of the Kansas City office'' and continued to do some work as salesman, mostly however with city trade only. When he first became manager there

were three other employees and afterward this office force was increased by two others. It appeared later in her testimony, however, that after he became manager he called on very few customers in city trade, possibly two prominent ones, and this may have been, and doubtless was, in the general interest of the business and not in the capacity of a mere salesman; and her answers, to many questions as to the character of his duties and what he did, was "I don't know."

After a demurrer to plaintiff's evidence, which was overruled, defendant introduced its evidence which described the nature of the business which has been heretofore stated. It tended to show that in the general conduct of the business it was very important that the managerial office should establish friendly personal relations with its customers and handle the business in a way that was pleasing and satisfactory to them. Alexander was made manager upon the death of the former manager Ronayne. As such he had authority, and exercised it, to hire and discharge employees, including stenographers and salesmen and to raise or lower salaries, grant vacations, and fix the time when they should come to work, without consulting the president of the company. Alexander had the sole responsibility of maintaining the banking connections and arrangements of the said branch office, and he it was who signed all the checks given on account of said branch. In fact the evidence is amply sufficient to show not only that Alexander was in fact the manager of said branch and that the importance of his influence, personality and business ability was clearly such as to create an insurable interest "of the defendant in the life of said Alexander at the time the policy was issued, and continued down to the time he ceased to be manager. And it was, and had been, the custom of the defendant to take out and carry business insurance on the life of their managers. The policy concerned herein as well as the other policy afterwards surrendered was not taken out by defendant as a creditor to secure any possible debt that Alexander might owe it, but to insure and protect the insurable interest the defendant had in the continuance of his life. In addition to this, the policy not only shows on its face and by its terms that it is a business insurance policy, but the evidence of defendant (the only evidence in the case on that point) is that the policy was taken out to reimburse the company for the loss that would be sustained should Alexander cease to be manager, "during that period of time when a new manager could be broken in to take over his duties."

It would seem to be clear that, at the time the policy was issued, defendant had an insurable interest in the life of its manager, Spencer A. Alexander, within the meaning of our statute, Section 5751, Revised Statutes of Missouri 1929 (6 Mo. St. Ann., p. 4406), and within the definition of "insurable interest" as given in Connecticut Mutual Life Ins. Co. v. Schaefer, 94 U. S. 457, l. c. 460, where it is said—

"Indeed it may be said generally that any reasonable expectation

of pecuniary benefits or advantage from the continued life of another creates an insurable interest in such life. . . . The essential thing is, that the policy shall be obtained in good faith, and not for the purpose of speculating upon the hazard of a life in which the insured has no interest.''

At page 461 of that case, the court quotes from an opinion of Chief Justice SHAW in Loomis v. Eagle Life Ins. Co., 6 Gray 399, as follows:

''All, therefore, which it seems necessary to show, in order to take the case out of the objection of being a wager policy, is, that the insured has some interest in the *cestui que vie;* that his temporal affairs, his just hopes and well-grounded expectations of support, of patronage, and advantage in life will be impaired; so that the real purpose is not a wager, but to secure such advantages, supposed to depend on the life of another.''

We do not understand that business insurance, which is unquestionably recognized in our business life, can apply *only* on the life of a manager of a large business, and not to the life of the manager of a comparatively small business. Nor can the legality of the insurance be denied and the contract adjudged a wagering policy because the proceeds, after being credited to the defendant's profit and loss account, was afterward paid out by it, at least some of said proceeds, to various employees in proportion to the respective amounts due them. Under defendant's method of dealing with its employees, it allowed bonuses to be paid them based on the profit the business had made during the course of the previous year; and if a loss were likely to arise from the necessary change of a manager, the company had a right to replace that loss with the proceeds of insurance then belonging to it, since that would not be out of line with the purpose of taking out the policy. Could it not ask, as was asked by the ''Lord'' in a parable of old, ''Is it not lawful for me to do what I will with mine own?''

It is stated in the briefs that the trial judge did not regard the defendant, beneficiary in the policy, as having no insurable interest in the life of its manager, but that the court entertained the view that the discharge of the manager by the company terminated its right to collect the insurance on the policy. There is nothing in the record, so far as we have been able to find, which states that the court held such view; but it would seem that there is nothing in the record which would otherwise appear to justify the judgment rendered.

Other authorities defining ''insurable interest'' in keeping with what has been set forth above, are to be found in 1 May on Insurance, Sec. 76; Bliss on Life Insurance, Sec. 21, p. 27; Vance on Insurance, p. 129; Mechanics Natl. Bank v. Comins, 72 N. H. 12, 16; Keckley v. Coshocton Glass Co., 86 Ohio St. 213; Lewis v. Palmer, 106 Va. 522; May v. Rudell, 270 Pac. 1041; Am. Trust Co. v. Life Ins. Co.,

92 S. E. 706; United States v. Suppler-Biddle Hdw. Co., 44 Sup. Ct. Rep. 547, 265 U. S. 189, 195. In this last cited case Chief Justice TAFT held that although the proceeds of business insurance might be termed and treated as profits, such would not constitute the policy a wagering contract.

The discharge of Alexander as manager did not terminate the defendant's right to receive the proceeds of the insurance collected on his death occurring thereafter. The rule in Missouri is to the effect that if the policy is valid *at the time it is issued,* i. e., if the insurable interest exists at that time, then, since the policy is regarded as a contract, not of indemnity, but to unconditionally pay a specific sum of money on the happening of the event therein specified, the insurable interest does not necessarily have to continue until death. An additional reason may be found in the fact that Section 5751, R. S. Mo. 1929, 6 Mo. St. Ann., p. 4406, in regard to insurable interest says only that no policy shall be *issued* where such interest does *not* exist and says nothing about the *continuance* of insurable interest. Such policy, valid in its inception, remains so though insurable interest of beneficiary has ceased unless the policy stipulates otherwise. [Bowers v. Missouri Mut. Assn., 62 S. W. (2d) 1058; 14 R. C. L., sec. 84, p. 906; McKee v. Phoenix Ins. Co., 28 Mo. 383; Blum v. New York Life Ins. Co., 197 Mo. 513; 37 C. J., sec. 68, p. 397; 1 Cooley's Briefs on Insurance, p. 414; Reilly v. Penn. Mut. Life Ins. Co., 207 N. W. 583; Wursburg v. New York Life Ins. Co., 203 S. W. 332.]

There is no evidence to justify the idea that the defendant insured the life of Alexander as a *creditor.* Loans were made to him during several years prior to the taking out of the policy while he was a mere salesman of the company. While the account apparently showed he owed $1000 to defendant, yet had the credits to which he was then entitled been credited thereon, as they afterwards were, the defendant would have appeared indebted to Alexander. The language of the policy contains no statement supporting the idea that it was *creditor* insurance. Indeed, it is directly to the contrary, and shows that it is a contract for insurance against loss of services. The policy in Baker v. Keet-Roundtree D. G. Co., 318 Mo. 969, is entirely different in this regard, and such difference is the basis of the court's holding therein. It is manifest that the case of Locher v. Knechenmiester, 120 Mo. App. 701, is not in point in this case since the cause of action as well as the facts involved are wholly different from those in the case at bar. The course pursued by the defendant company negatives the idea that it was either a wagering contract or creditor's insurance. When the premium on the other policy fell due on February 15, 1932, instead of paying that premium and continuing it in force, the defendant, as Alexander had been discharged, surrendered the policy. The premium theretofore paid on the other policy, the proceeds of which are here in suit, kept that policy in force until April 15, 1932,

but before that date arrived the policy was matured by the death of the insured. If defendant was endeavoring to gamble on the life of insured it would have been willing to gamble on the other policy also. It is possibly true, as plaintiff claims, mere "good faith" on defendant's part will not render the policy legal if it were, in fact, a wagering contract; but since there is nothing to show such illegality, the "good faith" of defendant in taking out the policy is not without its slight weight in determining that the policy was not a gamble. It will be observed too, since this suit was brought and tried as one in equity, that there is no equity appealing in behalf of plaintiff. Neither the expense of obtaining nor the continuance of the policy came out of Alexander or his estate. That was borne wholly by the defendant, and if considerations of equity are to be allowed any weight, they would seem to incline the scale in favor of defendant receiving the proceeds. Perhaps, however, this should be regarded as only "an observation made by the way."

The judgment of the trial court should be reversed and the cause remanded with direction to render judgment for defendant. It is so ordered. All concur.