**Carroll P. POLAND, Plaintiff-Respondent,**

v.

**ESTATE of Robert G. FISHER, Deceased, Defendant-Appellant.**

No. 47254.

Supreme Court of Missouri,

Division No. 1.

Dec. 14, 1959.

William M. Turpin, Bowling Green, F. D. Wilkins, Louisiana, Mo., for appellant.

Kappel & Neill, Walter S. Berkman, St. Louis, for respondent.

WESTHUES, Judge.

Plaintiff filed a claim for $10,600.03 in the Probate Court of Pike County, Missouri, against the estate of Robert G. Fisher, deceased. The case was transferred to the Circuit Court of Pike County where, by amendment, the claim was increased to $11,287.53. Plaintiff had collected $21,000 on life insurance policies on the life of Fisher wherein Poland was named beneficiary. A counterclaim was filed by the administrator of the Fisher estate claiming the difference between the amount of Poland's claim and the $21,000. A trial was had before the court without a jury and the court found for plaintiff in the sum of $11,287.53 plus interest from November 5, 1957, in the sum of $423.28, or a total sum of $11,710.81. The trial court denied the counterclaim on the theory that plaintiff was entitled to the entire amount of the insurance. The amount in dispute is $9,-289.19. The administrator appealed from the judgment entered.

Three points were briefed by the administrator. In the first assignment, complaint is made that the trial court excluded four exhibits, Nos. 3, 4, 9, and 11, offered by him. These exhibits were checks signed by Fisher and made payable to plaintiff. In the second point, defendant says that the court erred in holding that plaintiff had an insurable interest in Fisher's life. In the third point briefed, defendant claims that at the time the insurance policies were procured Fisher was indebted to plaintiff; that the policies were written to pro-

tect plaintiff against loss and that plaintiff was entitled only to such sum as would discharge the indebtedness and the balance should be paid to Fisher's estate.

The facts as shown by the record were: The decedent, Robert G. Fisher, was a dealer in livestock which business consisted mostly in Fisher's purchasing stock and selling it through the facilities of the Mississippi Valley Stockyards and the Valley Brokerage Company which companies were owned by plaintiff Carroll P. Poland. Poland, as owner of these companies, received compensation on a per-head basis for the use of the stockyards and for feeding the stock. Plaintiff also received a per cent of commission charged for the sale of the livestock. Plaintiff testified that the amount received through the business handled for Fisher amounted to about $3,000 per month; that Fisher brought more livestock to the yards than any other commissionman. Plaintiff stated that his business relationship with Fisher began in 1951 at which time Fisher was in financial difficulties and he, Poland, advanced Fisher $5,000. From that time until June 27, 1957, when Fisher was killed in an automobile accident, plaintiff, at various times, advanced substantial sums of money to help Fisher in his business. The evidence was, and it seems to be agreed by both parties, that Fisher was not an employee of plaintiff; nor were he and plaintiff partners or engaged in a joint enterprise. The only business connection was that the deceased used the facilities of plaintiff's companies in the sale and handling of livestock at the stockyards.

■ The sole complaint made by the defendant with reference to the finding of the court as to the amount due from the estate to plaintiff was that the court excluded the exhibits mentioned above which were checks payable to plaintiff and signed by Fisher. At the trial, defendant offered sixteen checks. Of these, all were admitted in evidence except the four above mentioned which were excluded on the theory that such checks were irrelevant and that no showing had been made that they pertained to any item involved in the case. Defendant cited the case of Bass v. Daetwyler, Mo.App., 305 S.W.2d 339, to support his position. We find no ruling in that case which supports defendant's contention. The checks themselves did not indicate that the amounts stated thereon were in payment on any items claimed to be due from Fisher to plaintiff. There was no evidence either oral or otherwise from which a finding could be made that the checks were involved in any transaction making up the amount due from the estate. In holding that the checks rejected by the trial court in the Bass case, supra, should have been admitted, the Springfield Court of Appeals stated in 305 S.W.2d loc. cit. 343(6, 7), the following: "Of course, whether the payments evidenced by defendant's cancelled checks were for items properly chargeable as partnership expenses was not established by the checks themselves, but rather depended upon defendant's credibility and the weight and value of his *oral* testimony concerning the items for which the checks were issued." As indicated by that statement, in that case there was oral evidence to the effect that the checks were for items involved in the accounting between Bass and Daetwyler. No such evidence was produced by the defendant in the case before us. We rule the trial court committed no error in rejecting the exhibits as evidence of any payment made by Fisher to Poland for any of the items sued on in this case.

■ In the second point briefed, defendant says that plaintiff Poland did not have an insurable interest in the life of the deceased, Fisher. It seems to be well settled that the administrator of Fisher's estate cannot, in the circumstances of this case, plead lack of insurable interest. Poland, with the consent of Fisher, procured the policies and paid the premiums and the insurance company paid the amount of insurance to Poland. Generally speaking, lack of insurable interest may be

pleaded by the insurer and no one else. In 44 C.J.S. Insurance § 212, p. 915, the rule is stated thus: "The question of the lack of insurable interest in a life insurance policy may be raised only by the insurance company, and, where the company recognizes the validity of the policy, as by paying the amount thereof to the person named therein or into court, ordinarily adverse claimants to the fund may not raise the objection of lack of insurable interest." We find this to be the rule in Missouri. See Runnion v. Paquet, Mo.App., 233 S.W.2d 803, loc. cit. 808 (9, 10).

In the last assignment of error briefed, defendant contends that the trial court erred in holding that the insurable interest of Poland in the life of Fisher was that of a "business associate" and not that of a creditor. Defendant says, and rightly so, that if the insurance on Fisher's life was to protect Poland against any loss for money advanced or loaned to Fisher, then Poland would only be entitled to as much of the insurance money as would satisfy the indebtedness and the balance should be paid to Fisher's estate. Whether Poland procured the insurance as a creditor of Fisher or as that of a "business associate" must be determined from the evidence. The trial judge evidently was well aware of the issues presented. The judge made a finding of fact and conclusion of law the substance of which was that defendant was indebted to plaintiff in the amount sued for with interest from the date of filing of the claim. On the issue of defendant's counterclaim, the court found that Fisher was a customer of plaintiff and that plaintiff's earnings amounted to about $3,000 per month as a result of that business relationship; that the insurance was obtained and paid for by plaintiff on the life of Fisher in the capacity of "business associate." The court found against the defendant whose theory was that the insurance was procured to protect the plaintiff against loss on the indebtedness owed to plaintiff. The court found that plaintiff procured the insurance to protect him from loss to

his business which would occur in case of Fisher's death. The court further held that such relationship constituted the basis for an insurable interest, citing Butterworth v. Mississippi Valley Trust Co., 362 Mo. 133, 240 S.W.2d 676, loc. cit. 680(1–3), 30 A.L.R.2d 1298, and Alexander v. Griffith Brokerage Co., 228 Mo.App. 773, 73 S.W.2d 418, loc. cit. 423. The court found that the only proof supporting defendant's theory that the insurance was taken to protect plaintiff against loss on the indebtedness of Fisher was the fact that the relationship of debtor and creditor existed.

The record supports the finding of fact made. Note the following testimony given during the examination of Poland:

"Question: Now, Mr. Poland, in answer to one of Mr. Berkman's questions this morning in relation to the day in your office when you and Mr. Fisher discussed this insurance, you stated that Mr. Fisher said, 'Under the circumstances we agreed that there ought to be insurance so we took it out.' What circumstances were you referring to?

"A. Well, I don't know if I said that Mr. Fisher stated that. Mr. Fisher was agreeable to it and the circumstances were that Bobby was mighty important to the revenue of both the Stockyards and the Brokerage company and he was a hard worker and he didn't get enough rest and the —well, a question come to your mind about what loss you would have if you lost a man such as Mr. Fisher."

In a deposition taken and introduced in evidence, we find the following:

"Q. Now, these policies of insurance were given to you to secure any indebtedness which Mr. Fisher had against him? A. No.

\*    \*    \*    \*    \*    \*

"Q. (By Mr. Wilkins) Do you claim that you had any insurable interest in

the life of Mr. Fisher except that which you have related for the record and which has been taken down here by the reporter? A. That I have any insurable interest in him?

"Q. Yes. A. You mean outside of debts?

"Q. Outside of debts. A. I didn't consider the debt.

"Q. Well—

\*    \*    \*    \*    \*    \*

"A. I believe, I said he was my best business getter and a couple of thousand cattle a month at ninety cents a head was pretty important, besides the hogs, and I was worried about him, the way he drove and the way he was doing some things, and I didn't want to lose him, and I knew what loss it would be to the stockyards and the brokerage company if something happened to him."

An examination of the record confirms the finding of the trial court that the defendant's only proof of the claim that the insurance was to protect Poland against loss on the indebtedness of Fisher was the admitted indebtedness to plaintiff. The evidence supports the finding of fact as made.

■ We further rule that the trial court's finding as to the law that plaintiff had an insurable interest in the life of Fisher is well supported by the authorities cited. We desire to add to those authorities a statement found in 44 C.J.S. Insurance § 203, p. 903, which reads: "Stated concisely, an insurable interest in the life of a person is an interest in having the life continue; a person has an insurable interest in the life of another where there is a reasonable probability that he will gain by the latter's remaining alive or lose by his death." See also Alexander v. Griffith Brokerage Co., 73 S.W.2d loc. cit. 423(1, 2).

We have reviewed this case de novo and our conclusions as to both the facts and the law are in accord with those of the trial court.

The judgment is hereby affirmed.

All concur.