**Fred O. and Treasa C. HERSHBERGER, Appellants,**

v.

**Roger D. YOUNG, Respondent.**

**No. WD 59120.**

Missouri Court of Appeals, Western District.

Nov. 13, 2001.

George D. Nichols, Lamar, for appellants.

Dawn A. Morville Johnson, St. Louis, for respondent.

Before SPINDEN, P.J., BRECKENRIDGE and NEWTON, JJ.

PATRICIA BRECKENRIDGE, Judge.

Fred and Treasa Hershberger appeal the trial court's grant of summary judgment in favor of Roger D. Young, their insurance agent, on the Hershbergers' petition for breach of fiduciary duty, negligence, and breach of contract. In their petition, the Hershbergers alleged that

they were the beneficiaries on a policy that insured the life of Kevin E. Meyer, and Mr. Young failed to properly and accurately characterize their business relationship with Mr. Meyer on the policy application. The Hershbergers contend that, as a result, the probate court entered judgment against them in a discovery of assets proceeding brought by Mr. Meyer's estate to determine the Hershbergers' interest in the life insurance proceeds.

On appeal, the Hershbergers argue that genuine issues of material fact exist regarding whether Mr. Young's breach of fiduciary duty, negligence, and breach of contract caused the probate court to enter judgment against them. They also argue that the probate court's judgment does not collaterally estop them from litigating their present claims. This court finds that the probate court determined that the Hershbergers have no insurable interest in the life insurance proceeds as business associates, the Hershbergers are collaterally estopped from relitigating that finding, and that finding precludes recovery on their present claims. Therefore, the summary judgment in favor of Mr. Young is affirmed.

### Factual and Procedural Background

When reviewing summary judgments, this court reviews the record, and any reasonable inferences from the record, "in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Thus, this court will review the record in the light most favorable to the Hershbergers. In 1984, the Hershbergers began operating "Burger Boy," a restaurant on 3rd Street in Lee's Summit. In the late 1980's, the Hershbergers hired Kevin E. Meyer as a cook in the restaurant. Mr. Meyer was a bright young man and a very hard worker. Mr. Meyer's superior performance as an employee of Burger Boy was one of the reasons the Hershbergers were able to open a second restaurant on 291 Highway in Lee's Summit in 1990. In 1993, Mr. Meyer left Burger Boy to pursue other opportunities, despite the fact that he had advanced to manager of the 3rd Street restaurant.

Mr. Meyer returned to Burger Boy in October 1994, when he bought the 3rd Street Burger Boy from the Hershbergers. Pursuant to the terms of the parties' sale contract, the Hershbergers, as trustees of their revocable trust, were the sellers, and Mr. Meyer was the buyer. The purchase price was $410,000, which consisted of $400,000 for the real estate, and $10,000 for the equipment. Mr. Meyer made a down payment of $10,000 toward the real estate price, and the Hershbergers financed the remaining $390,000 of the real estate price and all of the $10,000 equipment price, as evidenced by two promissory notes Mr. Meyer signed. The real estate note was to be paid in monthly installments over 15 years, while the equipment note was to be paid in monthly installments over 5 years. The notes were secured by a deed of trust on the real estate and a security agreement on the equipment.

In addition to executing the sale contract, promissory notes, deed of trust and security agreement, Mr. Meyer also executed a license agreement with Burger Boy, Inc., a corporation of which Mr. Hershberger was the president and sole shareholder. Under the license agreement, after Mr. Meyer paid off the real estate note, he was to begin paying Burger Boy, Inc., $1000 per month in license fees for the use of Burger Boy service mark, trade name, and trade secrets. Mr. Meyer also agreed to operate the restaurant in accordance with Burger Boy's standards of

operation and quality, and to diligently promote and make every reasonable effort to increase Burger Boy's business through advertising. The term of this license agreement was 30 years.

After the closing on the sale of the restaurant to Mr. Meyer, Mr. Hershberger contacted Steve Hamilton, a financial adviser who provided financial planning services to Mr. Hershberger and Mr. Meyer. Mr. Hershberger asked that Mr. Hamilton obtain quotes for a $400,000 life insurance policy on Mr. Meyer's life, with Mr. Hershberger as the beneficiary. Mr. Hamilton understood that "Mr. Hershberger wanted the policy for his own protection, as he had personally financed the sale of the store to Mr. Meyer and had an ongoing business relationship with Mr. Meyer." To Mr. Hamilton's knowledge, "there was no agreement that the insurance proceeds were to be used to pay Mr. Meyer's outstanding debt to Mr. Hershberger." Mr. Meyer never indicated to Mr. Hamilton that any insurance policy would pay off Mr. Meyer's debt to Mr. Hershberger in the event of Mr. Meyer's death. Mr. Hershberger did not use the quotes Mr. Hamilton provided him.

Instead, Mr. Hershberger contacted Mr. Young, who was an insurance agent with Farmers Insurance Company, and requested quotes for a $400,000 policy insuring Mr. Meyer's life. Mr. Young had provided insurance services to both Mr. Hershberger and Mr. Meyer in the past. Mr. Young provided Mr. Hershberger with several quotes; however, Mr. Hershberger decided to purchase insurance from a different carrier, North American Company for Life and Health Insurance.

Even though Mr. Hershberger decided to purchase the policy from North American and not Farmers, Mr. Young helped Mr. Hershberger and Mr. Meyer partially complete the North American policy appli-

cation. Mr. Young filled in several sections of the application in his own handwriting. Mr. Hershberger and Mr. Meyer signed the application.

One of the sections of the application Mr. Young completed was entitled, "Name of Owner if Other than Proposed Insured." In this section, Mr. Young listed Fred Hershberger. On the line indicating Mr. Hershberger's relationship to Mr. Meyer, Mr. Young filled in "Franchisor/Mortgagee." Under the beneficiary section, which was also completed by Mr. Young, he listed Fred Hershberger as the primary beneficiary, and described Mr. Hershberger's relationship to Mr. Meyer as "Mortgagee." Mr. Young listed Treasa Hershberger as the contingent beneficiary, and described her relationship to Mr. Meyer also as "Mortgagee."

Despite the fact that on the application, Mr. Young described Mr. Hershberger's relationship to Mr. Meyer as that of a franchisor or mortgagee, and Mrs. Hershberger's relationship to Mr. Meyer as that of a mortgagee, Mr. Young believed "wholeheartedly" that the policy was not taken out to cancel Mr. Meyer's debt on the promissory notes in the event of Mr. Meyer's death. According to Mr. Young, Mr. Hershberger did not need insurance coverage to satisfy Mr. Meyer's debt on the promissory notes, since he was secured by the deed of trust. Instead, Mr. Young believed that Mr. Hershberger was obtaining the insurance policy to protect his "ongoing business relationship" with Mr. Meyer.

Mr. Young based this belief on conversations he had with Mr. Meyer and Mr. Hershberger. When Mr. Young discussed the life insurance policy with Mr. Meyer, Mr. Young told Mr. Meyer that the policy was to insure the ongoing business relationship between Mr. Hershberger and Mr. Meyer. Mr. Young suggested to Mr.

Meyer that he purchase a separate life insurance policy to pay off his debts from his business ventures, including the promissory notes to the Hershbergers, in the event of his death. Mr. Meyer told Mr. Young that he was "not interested" in purchasing life insurance for that debt, because he believed that if anything happened to him, his business could be sold to pay off his outstanding debts. Mr. Meyer indicated to Mr. Young that he believed he had "spent enough money" and did not want to spend his money on life insurance.

According to Mr. Young, he had no discussions with the Hershbergers or Mr. Meyer as to any agreement to use the life insurance proceeds to pay the outstanding balance on the promissory notes. Mr. Young admitted that on the application he completed, he described the relationship to the insured as mortgagee out of force of habit, and that "[m]aybe [he] was in a hurry and did not fill that information in correctly." Mr. Young also admitted that perhaps he should have described the relationship Mr. Hershberger had with Mr. Meyer as that of "licensor/mortgagee."

Mr. Young forwarded the partially-completed application, a copy of the sale contract on the Burger Boy restaurant, and a copy of the license agreement to William Noone, the agent responsible for submitting the application to North American. Mr. Hershberger did not tell Mr. Noone that the proceeds of the life insurance policy would be used to satisfy Mr. Meyer's debt on the promissory notes in the event Mr. Meyer died. North American issued a policy to Mr. Hershberger insuring Mr. Meyer's life, and Mr. Hershberger paid the annual premium on the policy, which was $398.

After the policy was issued, Mr. Hershberger and Mr. Meyer talked about the insurance policy. According to Mr. Hershberger, Mr. Meyer "understood what the proceeds of the insurance policy were for," and understood the importance of his relationship with Mr. Hershberger in running Burger Boy franchises. Mr. Meyer indicated to Mr. Hershberger that he knew and understood that the life insurance proceeds would not be applied to pay off his debt on the promissory notes if he died.

After the Hershbergers sold Mr. Meyer the 3rd Street Burger Boy, Mr. Hershberger believed that his Burger Boy business benefited from Mr. Meyer's having an identical Burger Boy in the same market, i.e., Lee's Summit. Specifically, Mr. Hershberger believed he was benefiting because the menu and the prices were the same at both Burger Boy locations, and Mr. Meyer was "taking really good care of business," in that Mr. Meyer "knew the Burger Boy operation," and "knew the way [Mr. Hershberger] wanted things done." Also, Mr. Hershberger and Mr. Meyer shared equipment, employees, and the cost of advertising.

According to Mr. Hershberger, his ongoing business relationship with Mr. Meyer lasted until Mr. Meyer died on October 14, 1997. After Mr. Meyer's death, Mr. Hershberger sent a claimant's statement to North American so that he could obtain the proceeds of the life insurance policy. On the statement, Mr. Hershberger listed his relationship to Mr. Meyer as "Licensee." In November 1997, North American paid Mr. Hershberger $401,172.99 as benefits under the life insurance policy.

In January 1998, the Hershbergers filed a claim against Mr. Meyer's estate in the probate division of the Jackson County Circuit Court. In their claim, they sought to recover the unpaid balances on the promissory notes, which were $346,529.18 on the real estate note, and $4,106.72 on the equipment note. The Hershbergers contended that they had a claim against the estate because the appraised value of

the property held as security for the notes was only $150,000 and, therefore, they were under-secured. In their claim, the Hershbergers denied that they and Mr. Meyer ever agreed to use the proceeds of the life insurance policy on Mr. Meyer's life to satisfy the debt on the promissory notes. Instead, they argued that the life insurance policy proceeds were intended to compensate for their losses incurred as a result of the discontinuation of their business relationship with Mr. Meyer. To support this argument, they stated:

> Under Missouri law, where there are substantial business relationships, including a debtor-creditor relationship, and there is no agreement regarding the application of life insurance proceeds, a creditor can recover the outstanding debt and keep the insurance proceeds to compensate for losses incurred with respect to the business relationships other than the debt. *Poland v. Fisher's Estate*, 329 S.W.2d 768 (Mo.1959).

The personal representative for Mr. Meyer's estate, Marsha Jo Janes, responded to the Hershbergers' claim by filing a petition for discovery of assets, unjust enrichment, breach of contract, and an accounting. In her petition, Ms. Janes alleged that the Hershbergers "purchased the life insurance policy on Kevin Eugene Meyer's life for the sole purpose of securing the indebtedness reflected by the Promissory Notes...." Moreover, Ms. Janes contended that the Hershbergers had no insurable interest in Mr. Meyer's life beyond the indebtedness reflected in the promissory notes. She argued that, as a result, the estate was entitled to all of the life insurance policy proceeds, including the amount over Mr. Meyer's outstanding indebtedness, less the amount of the premiums paid by the Hershbergers.

Both the Hershbergers and Ms. Janes filed motions for summary judgment. In October 1998, the probate court entered judgment in favor of Ms. Janes on her motion. In its judgment, the probate court stated that the issue on summary judgment was whether "a business relationship exist[ed] between [Mr. Meyer] and the Hershbergers in addition to the debtor-creditor relationship which arose out of the sale of the restaurant by the Hershbergers to [Mr. Meyer][.]"

In addressing this issue, the probate court first examined the documents the parties executed in connection with the Hershbergers' sale of the 3rd Street Burger Boy to Mr. Meyer. The court rejected the Hershbergers' contention that the license agreement created more than a debtor-creditor relationship between them and Mr. Meyer, since the license agreement was made between Mr. Meyer and Burger Boy, Inc., and not the Hershbergers in their individual capacity. The court found that the Hershbergers, individually, had no insurable interest in Mr. Meyer's life other than in the debt during the real estate note's 15–year term, and Burger Boy, Inc., had no insurable interest in Mr. Meyer's life because Mr. Meyer's obligation to pay the monthly license fee did not begin to run until after the real estate note was satisfied, which had not yet occurred. The court also noted that the face amount of the life insurance policy, $400,000, was the same amount as Mr. Meyer's debt to the Hershbergers under the two promissory notes, and the initial term of the policy, 15 years, was the same as the term of the real estate note. The probate court concluded that the documents from the sale of the 3rd Street Burger Boy did not give the Hershbergers an insurable interest in Mr. Meyer's life beyond the debt owed on the two promissory notes and, in fact, supported a finding that the Hershbergers had no more than a

debtor-creditor relationship with Mr. Meyer.

The probate court then distinguished two cases relied upon by the Hershbergers to support their contention that they were insuring "a business relationship which existed independently of the debtor-creditor relationship." The court noted that *Poland v. Fisher's Estate*, 329 S.W.2d 768 (Mo.1959), and *Butterworth v. Mississippi Valley Trust Co.*, 362 Mo. 133, 240 S.W.2d 676 (Mo.1951), were distinguishable because, in those cases, the evidence established that the debtor-creditor relationship was incidental to the business relationship, and the beneficiary was earning a calculable amount of money because of his business relationship with the decedent. The court found that in the Hershbergers' case, on the other hand, there "[wa]s no evidence of any economic gain to [the Hershbergers] other than the interest earned on the promissory notes."

In addition to finding that no insurable business relationship existed between the Hershbergers and Mr. Meyer, the probate court went on to find that the insurance policy application indicated that the Hershbergers and Mr. Meyer did not intend to insure a business relationship. In looking at the application, the court found that the use of the word "franchisor" to describe Mr. Hershberger's relationship to Mr. Meyer was "simply untrue," since Burger Boy, Inc., was the franchisor, and not Mr. Hershberger. Rather, the court found that the use of the term "mortgagee" to describe the Hershbergers' relationship to Mr. Meyer "clearly implie[d] that it was understood that a debt was owed by [Mr. Meyer] to [the Hershbergers]." The court noted that even as late as October 29, 1997, in a letter to the Department of Health to obtain a copy of Mr. Meyer's death certificate, Mr. Hershberger referred to himself as a "creditor," and stated that he held a mortgage on a business he sold Mr. Meyer and needed to file a life insurance claim.

The court found that the application for the insurance policy and the policy itself "clearly demonstrate that both Mr. Hershberger and Mr. Meyer understood and agreed that the insurance policy was to cover Mr. Meyer's indebtedness to [the Hershbergers] as evidenced by the [documents involved in the sale of the Burger Boy restaurant]." Since neither party alleged that the statements in the insurance policy application were incomplete or ambiguous, the court declined to consider the Hershbergers' parol evidence that the parties intended that the policy "cover a 'business relationship' beyond that of debtor-creditor." In fact, the probate court stated that the Hershbergers' "attempt to construe the terms of the application for the insurance policy to embrace a 'business relationship' is argumentative, imaginary or frivolous."

The Hershbergers did not appeal the probate court's judgment. Instead, the Hershbergers filed a petition for breach of fiduciary duty, negligence, and breach of contract against Mr. Young. First, the Hershbergers alleged that Mr. Young agreed to procure an insurance policy on Mr. Meyer's life that would insure the Hershbergers' business relationship with Mr. Meyer, and Mr. Young breached his fiduciary duty to them to procure such a policy by improperly referring to them as "franchisor/mortgagee," rather than "business associate," on the insurance application. Second, the Hershbergers alleged that Mr. Young negligently characterized their relationship to Mr. Meyer as that of debtor-creditor rather than that of business associates. Finally, the Hershbergers alleged that they had an agreement with Mr. Young to procure an insurance policy on Mr. Meyer's life that would in-

sure the business relationship, and Mr. Young breached that agreement by insuring the debtor-creditor relationship instead. The Hershbergers alleged that Mr. Young's conduct caused them to lose in the probate proceeding, which forced them to apply the life insurance policy proceeds to pay off Mr. Meyer's promissory notes and to surrender the remaining insurance proceeds to Mr. Meyer's estate. The Hershbergers also claimed that Mr. Young's conduct required them to retain counsel and incur attorney's fees and litigation expenses in the probate proceeding. The Hershbergers sought damages in the amount of $400,000 for the lost life insurance policy proceeds, plus $77,133.62 in attorney's fees and litigation expenses, and pre-judgment interest.

Mr. Young filed a motion to dismiss the Hershbergers' petition, or in the alternative, for summary judgment. In his motion, he alleged that the doctrine of collateral estoppel barred the Hershbergers' claims. The court granted Mr. Young's motion for summary judgment. The Hershbergers filed this appeal.

### Standard of Review

■ Appellate review of a summary judgment is essentially de novo. *ITT*, 854 S.W.2d at 376. This court's criteria for ascertaining the propriety of summary judgment are the same as those which a trial court uses initially. *Id.* This court does not defer to the trial court's order granting summary judgment because the trial court's initial judgment is based on the record submitted and amounts to a decision on a question of law. *Id.* The moving party has the burden of establishing a right to judgment as a matter of law and that no genuine issue of material fact exists. *Id.* at 378.

Mr. Young was a defending party in this action. When the movant for summary judgment is a defending party in a lawsuit, the prima facie showing required by Rule 74.04 is "necessarily different." *Id.* at 381. A defending party may establish a right to judgment as a matter of law by showing:

(1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.*

### Collateral Estoppel Bars the Hershbergers' Claims

■ In their sole point on appeal, the Hershbergers argue that the trial court erred in granting summary judgment in favor of Mr. Young because genuine issues of material fact remain regarding whether they lost in the probate proceeding because of Mr. Young's "failure to properly and accurately characterize" their business relationship with Mr. Meyer in the insurance application, and whether that failure constituted a breach of fiduciary duty, negligence, or breach of contract. In response, Mr. Young argues that the probate court found that there was no business relationship between the Hershbergers and Mr. Meyer that would constitute an insurable interest beyond the debtor-creditor relationship, and collateral estoppel bars relitigation of that issue. Because there was no insurable business relationship between the Hershbergers and Mr. Meyer, Mr. Young argues that he cannot be held liable for failing to characterize the relationship as a business relationship on the insurance application, or for failing to

procure a policy insuring such a relationship.

■ Collateral estoppel prohibits parties from relitigating issues that have been adjudicated. *Shahan v. Shahan,* 988 S.W.2d 529, 532 (Mo. banc 1999). To determine whether collateral estoppel applies, courts are to consider four factors:

(1) [W]hether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

*Id.* at 532–33. The Hershbergers concede that factors (2) and (3) have been met in this case, because the probate proceeding resulted in a judgment on the merits, and they were a party to the probate proceeding. They claim, however, that factors (1) and (4) have not been satisfied.

The first factor for this court to decide, then, is whether the adjudicated issue in the probate proceeding was identical to the issue in the present case. In its judgment, the probate court stated that the issue on summary judgment was whether "a business relationship exist[ed] between [Mr. Meyer] and the Hershbergers in addition to the debtor-creditor relationship which arose out of the sale of the restaurant by the Hershbergers to [Mr. Meyer][.]" The Hershbergers argue that the reason the probate court found that no business relationship existed was because Mr. Young failed to properly characterize the relationship on the insurance policy application.

It is true that one of the reasons the probate court concluded that the Hershbergers had no insurable interest in the life insurance proceeds beyond that of creditors was because of its finding that the Hershbergers and Mr. Meyer did not intend that the policy insure any type of business relationship, but instead intended that it be a contract for creditor insurance. To support this finding, the probate court relied upon Mr. Young's description in the policy application of the Hershbergers' relationship to Mr. Meyer as being that of "mortgagees." The court refused to consider parol evidence the Hershbergers offered indicating that the Hershbergers and Mr. Meyer actually intended to insure a business relationship, because neither the Hershbergers nor Mr. Meyer's estate had alleged that the language used in the policy application was incomplete or ambiguous.

In addition to finding that the Hershbergers and Mr. Meyer did not intend to insure a business relationship, however, the probate court also found that no such insurable business relationship existed. In its judgment, the probate court specifically found that there was "no evidence of any economic gain to [the Hershbergers] other than the interest earned on the promissory notes." This finding is not based on the language Mr. Young used on the insurance policy application to describe the Hershbergers' relationship with Mr. Meyer and, in fact, has nothing to do with what relationship the Hershbergers and Mr. Meyer intended to insure. Rather, this finding addresses whether the Hershbergers actually had a business associate relationship with Mr. Meyer that they could insure.

■ For a person to have an insurable interest in the life of another, there must be " 'a reasonable probability that he will gain by the latter's remaining alive or lose by his death.' " *Poland,* 329 S.W.2d at 772 (citation omitted). Stated another way, "any reasonable expectation of pecu-

niary benefit or advantage from the continued life of another creates an insurable interest in such life." *Alexander v. Griffith Brokerage Co.*, 228 Mo.App. 773, 73 S.W.2d 418, 423 (App.1934). The only evidence of economic benefit the Hershbergers presented beyond that of interest earned on the promissory notes was Mr. Hershberger's testimony that he believed his Burger Boy restaurant was benefiting from having Mr. Meyer's Burger Boy restaurant in the same market because Mr. Meyer took "really good care of business," and having identical high-quality restaurants in the same market increased the value of both restaurants. Also, Mr. Hershberger believed his business was benefiting because he and Mr. Meyer shared equipment, employees and the cost of advertising. Mr. Hershberger was unable to quantify any of this alleged economic benefit, however, and he could only speculate about any economic loss he suffered as a result of Mr. Meyer's death. By granting summary judgment against the Hershbergers, the probate court essentially found the Hershbergers' evidence of economic gain insufficient as a matter of law.

The probate court's finding of no evidence of economic gain to the Hershbergers was alone sufficient to defeat the Hershbergers' claim that they had an insurable business relationship with Mr. Meyer. Therefore, the Hershbergers had no insurable interest in the life insurance policy proceeds beyond that of creditors, regardless of what Mr. Young stated on the policy application or what the Hershbergers and Mr. Meyer intended that the policy application state.

The Hershbergers did not appeal the probate court's judgment. Thus, the Hershbergers are bound by the probate court's finding that they had no insurable business relationship with Mr. Meyer.

The issue of whether the Hershbergers actually had an insurable business relationship with Mr. Meyer is identical to an issue contained in the Hershbergers' claims in the present case. Each of the claims the Hershbergers assert requires that Mr. Young's conduct of failing to characterize their relationship to Mr. Meyer on the policy application as "business associates" be the cause of their alleged injury. *See Preferred Physicians Mut. Mgt. Group v. Preferred Physicians Mut. Risk Retention,* 918 S.W.2d 805, 811 (Mo.App. 1996) (element of breach of fiduciary duty claim is that the defendant's breach caused the plaintiff's harm); *Hecker v. Mo. Prop. Ins. Placement Facility,* 891 S.W.2d 813, 816 (Mo. banc 1995) (element of negligence claim is that defendant's breach of a duty owed to the plaintiff proximately caused the plaintiff's injury); *Moravac v. Dave Littleton Ford, Inc.,* 838 S.W.2d 151, 153 (Mo.App.1992) (element of breach of contract claim is that the defendant's nonperformance of the contract terms caused the plaintiff's damages).

The Hershbergers' alleged injury is the probate court's judgment against them. Because the probate court found that the Hershbergers had no business relationship that they could insure beyond that of creditors, Mr. Young's failure to characterize the relationship as that of business associates on the insurance policy application is not the cause of their injury. Even if Mr. Young had characterized their relationship as that of business associates on the insurance policy application, without an insurable interest in the business relationship, Mr. Hershberger would still have been limited to that portion of the insurance proceeds to which he was entitled as Mr. Meyer's creditor on the promissory notes. *See Estate of Bean v. Hazel,* 972 S.W.2d 290, 291–92 (Mo. banc 1998). Therefore, this court finds that an issue adjudicated in the probate proceeding, the nonexistence

of an insurable business relationship, is identical to the causation element in each of the Hershbergers' claims in the present case.

Having found that the issue in the probate proceeding was identical to the element of causation in this case, this court next turns to the Hershbergers' argument that collateral estoppel does not bar their claims because they did not have a full and fair opportunity to litigate their claims in the probate proceeding. Specifically, the Hershbergers contend that they did not have a full and fair opportunity to litigate their claims because the probate court stated in its judgment that it would not consider the Hershbergers' parol evidence on one of the issues in the case.

The parol evidence the probate court refused to consider concerned the issue of what type of relationship the Hershbergers and Mr. Meyer intended that the policy insure, and not the issue of whether the Hershbergers and Mr. Meyer had an insurable business relationship. Whether the Hershbergers and Mr. Meyer had an insurable business relationship in the first place was at issue in the probate proceeding, and was argued extensively in the parties' motions for summary judgment and responses filed in that proceeding. There was no restriction on the Hershbergers' presentation of evidence on this issue. From the court's statement that there was "no evidence of any economic gain to [the Hershbergers] other than the interest earned on the promissory notes," it is apparent that the probate court found the Hershbergers' evidence on the issue insufficient as a matter of law. Since the Hershbergers did not appeal the probate court's judgment, the court's finding on this issue is binding. This court finds that the Hershbergers had a full and fair opportunity in the probate proceeding to litigate whether an insurable business rela-

tionship existed between themselves and Mr. Meyer.

## Conclusion

In its judgment, the probate court determined that the Hershbergers did not have an insurable business relationship with Mr. Meyer beyond that of debtor-creditor. The probate court's judgment was on the merits, the Hershbergers were a party to the proceeding, and had a full and fair opportunity to litigate the issue. The Hershbergers are, therefore, collaterally estopped from relitigating the existence of an insurable business relationship.

The probate court's finding of a lack of an insurable business relationship negates the Hershbergers' breach of fiduciary duty, negligence, and breach of contract claims against Mr. Young. Because the Hershbergers had no insurable business relationship with Mr. Meyer, any negligent act or breach by Mr. Young by failing to characterize the relationship as "business associates" on the policy application cannot be found to have caused the injury the Hershbergers allege in their present claims. Because Mr. Young presented "facts that negate *any one* of the claimant's elements facts," the trial court properly concluded that Mr. Young was entitled to judgment as a matter of law. *ITT*, 854 S.W.2d at 381.

The summary judgment in favor of Mr. Young is affirmed.

All concur.