FRANCES H. BUTTERWORTH and M. E. TURNER, Co-Trustees of A. C. BUTTERWORTH, Appellants, v. MISSISSIPPI VALLEY TRUST COMPANY and MISSISSIPPI VALLEY TRUST COMPANY, O. E. SCHAEFER and MRS. GEORGE L. TARLTON, Trustees of George Locke Tarlton, and MISSISSIPPI VALLEY TRUST COMPANY, Co-Trustee of A. C. BUTTERWORTH, and BETTY JANE WILLIAMS and MRS. GEORGE L. TARLTON, Beneficiaries of George Locke Tarlton, Respondents. No. 42079—240 S. W. (2d) 676.

Division One, June 11, 1951.

*Donald E. Fahey* and *Robert L. Brown* for appellants.

*Coburn, Storckman & Croft, Richmond C. Coburn* and *Rexford H. Caruthers* for respondents.

136

██ CONKLING, P. J.—In their action for accounting of the proceeds collected on a life insurance policy ($100,207.18) plaintiffs-appellants, Frances H. Butterworth and M. E. Turner, have appealed from the decree entered below after a trial, wherein the chancellor entered judgment in favor of the defendants and dismissed plaintiff's petition with prejudice. Plaintiffs are co-trustees, and, with the Mississippi Valley Trust Company (hereinafter called "the Trust Company"), are all the trustees under a written instrument of trust executed December 9, 1939, by Asa C. Butterworth for the benefit of Frances H. Butterworth and others. That trust is hereinafter referred to as the "Butterworth Trust."

For five years prior to Feb. 8, 1935 Asa C. Butterworth had a certain policy of term life insurance upon his life in the sum of $100,000, which had been issued by Fidelity Mutual Life Insurance Company. On February 8, 1935, by agreement between Butterworth and the company that policy was converted to the ordinary life policy, the proceeds of which are here in issue. At the time of the conversion of the policy the insurer paid Butterworth $404.00, "the cash surrender value of the earlier (term) policy at the time it was converted." The insurance policy now in question (face value $100,000.00) was an ordinary life policy issued February 8, 1935, upon the life of Asa C. Butterworth; that policy, numbered 524,437, was also issued by Fidelity Mutual Life Insurance Company, the annual premium was $4,757 less dividends; and the beneficiary was "G. Locke Tarlton, Creditor of the Insured." On March 13, 1935 Asa C. Butterworth assigned that policy to the named beneficiary, G. Locke Tarlton.

That written "Assignment-Absolute", made upon a printed form of the insurer, signed and acknowledged under oath before a notary and witnessed by the insurer's general agent, is attached as an exhibit to the "Stipulation of Facts" introduced in evidence, and is now before us. It transferred the policy and the ownership thereof to Tarlton, is without reservation or exception, is absolute in nature and effect, conveyed all of Butterworth's "right, title ██ and interest in and to the policy" to Tarlton and the latter's assigns, and authorized the insurance company to pay all sums due under the policy to Tarlton, or his assigns, without notice to Butterworth. On February 10, 1936, G. Locke Tarlton irrevocably (and by a similar assignment) assigned the policy to himself, O. E. Schaefer and the Trust Company as the trustees under an irrevocable trust created by G. Locke Tarlton by written instrument of trust on December 26, 1935. That trust is hereinafter referred to as the "Tarlton Trust". On May 6, 1943, G. Locke Tarlton died testate in Illinois. On June 16, 1944, Asa C. Butterworth purported to assign his interest in the policy to the Trust Company and M. E. Turner, as trustees of the Butterworth Trust. On November 5, 1947, Asa C. Butterworth died testate and

the policy became payable. On December 15, 1947, the Trust Company, as co-trustee of the Tarlton Trust, collected the amount of the policy and accrued dividends, $100,207.18. That sum was credited by the Trust Company to the Tarlton Trust.

Defendants are the Trust Company, individually, and as a Co-trustee of the Butterworth Trust; O. E. Schaefer, Mrs. George L. Tarlton (who is Leota M. Tarlton, widow of G. Locke Tarlton) and the Trust Company, all executors of the estate of G. Locke Tarlton under the latter's will, as co-trustees of the Tarlton Trust. Those executors were duly appointed as such by the probate court of St. Clair County, Illinois on May 18, 1943, and were discharged by that court on June 21, 1948. The Trust Company was appointed executor of the Tarlton estate in ancillary proceedings by the probate court in the City of St. Louis, Missouri, on May 25, 1943, and was discharged by said court on June 8, 1948. Under the provisions of the Tarlton Trust, defendant Leota M. Tarlton (Mrs. Geo. L. Tarlton), upon the death of G. Locke Tarlton became successor co-trustee of said Tarlton Trust. Defendants Betty Jane Williams (nee Betty Jane Tarlton) and Leota M. Tarlton are the principal beneficiaries of the Tarlton Trust. Under the terms of the Butterworth Trust, Frances H. Butterworth, upon the death of Asa C. Butterworth, became successor co-trustee of the Butterworth Trust.

It appears that the business affairs of Tarlton and Butterworth were closely interrelated and interdependent. Tarlton was a general contractor, and about 1925 became acquainted with Butterworth when Tarlton was doing road work in Arkansas. Shortly thereafter, Butterworth moved to St. Louis from Little Rock and formed a partnership with Tarlton. They operated as the General Material Company. The principal business of that Company was the production and delivery of ready-mix concrete. They operated in the St. Louis metropolitan area, having offices in the Buder Building in St. Louis. Butterworth and Tarlton were pioneers in that business. The General Material Company was incorporated late in 1927, at which time Butterworth became President and Treasurer, a position he held until his death in 1947. Butterworth and Tarlton each had a one-fourth stock interest in the General Material Company. In March, 1935 Butterworth and Tarlton each had that one-fourth interest. Butterworth was the active head of the General Material Company.

The Missouri-Illinois Material Company, a corporation, was engaged in producing sand and gravel obtained by dredging operations on the Mississippi and Meramec Rivers. Tarlton was the active head of the Missouri-Illinois Material Company. Tarlton owned seventy-five per cent of the shares of stock of the Missouri-Illinois Material Company and Butterworth owned twenty-five per cent of the shares of stock therein. Both Butterworth and Tarlton were officers and directors of the company until Tarlton's death in 1943. The General

Material Company in producing ready-mix concrete required large quantities of sand and gravel. The General Material Company was the largest single purchaser of sand and gravel from the Missouri-Illinois Material Company from 1927 until Tarlton's death in 1943.

Tarlton's contracting business bore the corporate name of G. L. Tarlton Contractor, Inc. This company specialized in municipal contracting, which was largely paving work. It did an active and extensive business. The offices of G. L. Tarlton Contractor, Inc., and the Missouri-Illinois Material Company were housed together, and Tarlton was the active head of both companies. G. L. Tarlton Contractor, Inc., was engaged in doing business with the General Material Company, and whenever the contracting company used ready-mix concrete, it purchased the same from the General Material Company. Through the years large purchases of ready-mix concrete were made by the contracting company from General Material Company. Whenever practical the contracting company used large quantities of ready-mix concrete. Upon the trial plaintiffs conceded "that Mr. Tarlton had an insurable interest in the life of Mr. Butterworth at the date the policy was converted and assignments made."

The oral testimony further established that neither Butterworth nor his assignees paid any premiums on the policy of insurance numbered 524,437 but Tarlton and his assignee paid $57,955 as premiums on the policy beginning in 1935 and ending with Butterworth's death in 1947. Tarlton personally paid the premiums due in 1935, 1936, 1937, 1938, 1939 and 1940 in a total amount of $26,940. The Tarlton Trust thereafter paid the premiums to and including 1947 in a total amount of $31,015.00. After Tarlton's death, Butterworth purchased from Tarlton's estate through the defendant Schaefer (an executor of Tarlton's estate and a brother-in-law and confidential business advisor of Tarlton during the latter's lifetime) the shares of stock which had been owned by Tarlton in the General Materials Company. In that deal the Tarlton estate purchased Butterworth's shares in the Missouri-Illinois Company, and in the two transfers Butterworth paid the Tarlton estate $42,320.00. That deal was "to clean up all business relations between the two men" (Butterworth and Tarlton) and neither during that deal, nor thereafter, did Butterworth make any claim to any interest in policy number 524,437. After Tarlton's death Butterworth made no claim to Mrs. Tarlton (or to anyone) that he had or claimed any interest in the policy in question.

The testimony further established that Paul Clerk, a practicing lawyer of the St. Louis Bar rendered Tarlton certain legal services; Clerk drew the Tarlton Trust instrument dated December 26, 1935; Tarlton discussed with Clerk the assets which Tarlton contemplated placing in the Tarlton Trust, among them, policy number 524,437 on the life of Butterworth. Tarlton told Clerk that policy number 524,437

was originally issued to him as a creditor of Butterworth; that thereafter there was a "settlement of all (financial) obligations between the two men" (Butterworth and Tarlton); that "as a part of that settlement this policy (number 524,437) was assigned (On March 13, 1935) by Mr. Butterworth to Mr. Tarlton absolutely"; that thereupon "Mr. Tarlton * * * owned the policy fully". There is no evidence that until after the death of Butterworth any other trustees of the Butterworth Trust (and particularly the Trust Company) knew that Butterworth had executed the purported assignment of his purported interest in the policy to the Butterworth trustees on June 16, 1944.

Plaintiffs' theory of their right to accounting seems based upon their contention that where a policy of insurance is taken out by insured "on his own life and made payable to and assigned to a creditor of insured *as security for a debt,* the creditor thereafter paying the premiums, the creditor, upon maturity of the policy, is entitled to retain out of the proceeds of the policy only the amount of the indebtedness then unpaid, plus the premiums paid to maintain the policy; and the balance of the proceeds must go to the insured debtor, his executors, assignees or other named beneficiaries". (Emphasis ours.) (Plaintiffs obviously mean to the executors, assignees or other named beneficiaries of the insured debtor). The plaintiffs also contend that Tarlton's assignment of the policy to the Tarlton Trust was without consideration; that Butterworth was not indebted to the Tarlton Trust, and at the time of Tarlton's death was not indebted to Tarlton; that the assignment of the policy to Tarlton Trust was void because Tarlton Trust had ▮▮▮ no insurable interest in Butterworth; and that when the Trust Company applied the $100,207.18 to the credit of the Tarlton Trust it had knowledge of the now alleged rights of the Butterworth Trust.

The defendants' theory of the case is, and defendants contend, that the assignment of March 13, 1935, of the policy by Butterworth to Tarlton was an absolute assignment made in satisfaction of a debt to an assignee who had a full insurable interest in the life of the insured; that after March 13, 1935, Tarlton and his assignee paid all the premiums, and that Butterworth had no interest at all which he could assign to the Butterworth Trust on June 16, 1944, or at any time after March 13, 1935.

▮ Plaintiffs admitted during the trial, and the facts above fully support such admission, that Tarlton had an insurable interest in the life of Mr. Butterworth at the date the policy was converted and when it was assigned to Tarlton. It is uniformly held that a creditor has an insurable interest in the life of his debtor. 44 C. J. S., Insurance, § 208, p. 909, Dieterle v. Standard Life Insurance Company, (Mo. App.) 119 S. W. (2d) 440, Long v. Montgomery, (Mo. App.) 22 S. W. (2d) 206. Any pecuniary interest in the continued life of

another is an insurable interest. Baker v. Keet-Rountree Dry Goods Company, 318 Mo. 969, 2 S. W. (2d) 733. The facts of this case show that Tarlton, from about 1925 until Tarlton's death in 1943, had an insurable interest in Butterworth's life for another reason as well. The business relationships of the two men were interlocked and intertwined and this record shows that for their mutual prosperity, they were mutually dependent upon each other. We will neither labor nor restate the facts set out above. Those facts speak for themselves. The business relationships of the two, their dependency upon each other, gave Tarlton a full insurable interest in the life of Butterworth. Generally, any reasonable expectation of pecuniary benefit to one person from the continued life of another creates an insurable interest. Baker v. Keet-Rountree Dry Goods Company, supra, Alexander v. Griffith Brokerage Company, 228 Mo. App. 773, 73 S. W. (2d) 418, and cases cited, Connecticut Mutual Life Ins. Co. v. Schaefer, 94 U. S. 457, 460, 24 L. Ed. 251, 44 C. J. S. Insurance, § 203, p. 903. Authorities could be multiplied. There can be no possible question that Tarlton had an insurable interest in Butterworth's life when policy number 524,437 was issued, when it was thereafter assigned to Tarlton, and thereafter so long as Tarlton lived.

■ While plaintiffs concede that Tarlton had an insurable interest in Butterworth's life, and concede that the assignment of the policy "was an absolute assignment", plaintiffs nevertheless contend, (1) that the policy was assigned by Butterworth to Tarlton "*as security* for his (Butterworth's) indebtedness", (2) that Butterworth's assignment to Tarlton on March 13, 1935, "was an assignment of Butterworth's interest as distinguished from that type of assignment which substitutes the assignee for the insured as owner of the policy", and (3) that Butterworth, after the 1935 assignment "retained an interest in the policy". We cannot agree with plaintiffs' contentions (1), (2) and (3) just above. We consider them in order.

As to (1) above the evidence is, and there is no evidence to the contrary, that after the date of the issuance of the policy, March 8, 1935, Tarlton and Butterworth made a settlement between themselves of all their then existing and outstanding financial obligations each to the other, that "as a part of that settlement this policy was assigned by Butterworth to Tarlton absolutely", and that Tarlton thereafter owned the policy. That testimony entirely disposes of plaintiffs' contention that the policy was assigned "*as security* for his (Butterworth's) indebtedness." There is not a word nor an indication in the testimony or in the assignment itself that the policy was assigned "as security" for indebtedness or anything else. The policy was assigned as part of the settlement of theretofore existing indebtedness. It thereafter was Tarlton's property absolutely.

 As to (2) above, we have hereinabove described, quoted from and stated the effect of the assignment of March 13, 1935. That instrument assigns also "all dividends, benefit and advantage to be derived therefrom" (from the policy), authorizes surrender of the policy by assignee to the insurer without notice for collection, and authorized payment of the policy by the insurer without notice. Upon execution of that assignment Tarlton became absolute owner of the policy and Butterworth had no interest therein of any kind, character or degree.

· It is next contended by plaintiffs that, "The *creditor* by assigning the policy to an irrevocable trust of his own creation cannot thereby defeat the rights of the insured, or those claiming through him, to the balance of the proceeds". (Emphasis ours) In support of this contention plaintiffs cite Locke v. Bowman, 168 Mo. App. 121, 151 S. W. 468. The fallacy and apparent error of this contention lies first in plaintiffs' assumption that Tarlton, on February 10, 1936 (when he assigned the policy to Tarlton Trust), was a creditor of Butterworth. Not a syllable or circumstance before us tends to prove he was then a creditor of Butterworth, or that he had been such a creditor since March 13, 1935. A reading of Locke v. Bowman, supra, readily distinguishes it from these facts. Space forbids an extended discussion of it. It was appealed upon the pleadings only and determined only which party there had the burden of proof. We have ruled under the evidence here Tarlton was not a mere creditor, but that he had an insurable interest other than as creditor and owned the policy, having obtained full title to it when Tarlton and Butterworth composed and settled the financial account between them.

Throughout their entire brief plaintiffs seem to base their theory of their case and to predicate their argument upon their misinterpretation of the facts presented by this record. It is insisted throughout plaintiffs' brief that the policy was assigned to Tarlton "as *security* for indebtedness and for no other reason". The facts of record completely disprove and destroy any such contention.

 Plaintiffs contend also that equity should not permit the Tarlton Trust to retain the proceeds of the policy because it was engaged in a wagering transaction contrary to public policy; that it should not even be credited with the $57,955 paid as premiums on the policy from 1935 to 1947, because (1) the policy was assigned to Tarlton Trust without notice to Butterworth, (2) the Tarlton Trust was not a creditor of Butterworth and (3) the Tarlton Trust had no insurable interest in Butterworth and thus acquired nothing by Tarlton's assignment of the policy on February 10, 1936.

As to (1) and (2) just above there appears no reason whatever why Tarlton should have given notice to Butterworth of the former's assignment of the policy in 1936. By Butterworth's assignment to

Tarlton, Butterworth parted with possession, ownership and right of control over even the continued existence of the contract of insurance; the assignment even expressly authorized Tarlton. "to surrender said policy to said company without notice to me (Butterworth) at any time he may elect to do so and receive such sum as said company will pay as the cash surrender value of said policy". It is of no moment whatever that the Tarlton Trust was not a creditor of Butterworth. That is in no wise determinative here. Not even Tarlton was a creditor of Butterworth after March 13, 1935. And it is not here contended that the Tarlton Trust is entitled to the proceeds of the policy because a creditor and debtor relationship ever existed between the Tarlton Trust and Butterworth.

 We come now to consider plaintiffs' last contention that Tarlton Trust had no insurable interest in Butterworth and that therefore Tarlton Trust was engaged in a wager transaction contrary to public policy. Much has been written upon the origin, the reasons for and the application of the doctrine of wager life insurance policies, i. e., policies wherein the beneficiary himself secured a life insurance policy upon an insured in whom he had no insurable interest. Connecticut Mutual Life Insurance Company v. Schaefer, supra, Alexander v. Griffith Brokerage Company, supra, Baker v. Keet-Rountree Dry Goods Co., supra, Williams v. Peoples Life and Accident Insurance Company, 224 Mo. App. 1229, 35 S. W. (2d) 922, Life Insurance Law of Assignments, Hine and Nichols, page 72, Richards on Law of Insurance (4th Ed.) § 24, p. 32 et seq., May on Insurance (4th Ed.) p. 147, 44 C. J. S. Insurance § 200, p. 896. Simply stated, it is widely held to be against public policy to permit the temptation to speculate in human life by means of the beneficiary securing a contract of insurance in which the beneficiary may profit solely by the death of the insured. A man may not take out insurance on the life of one not so connected with him as to make the continuance of the life of the insured a matter of interest and concern to him. The law does not permit one to " 'profit by his own fraud, * * * take advantage of his own wrong * * * or acquire ♦property by his own crime.' " Grose v. Holland, 357 Mo. 874, 211 S. W. (2d) 464.

But the instant facts take this case out of the operation of the rule respecting wager life insurance contract. Under the facts here of record this insurance was taken out by Butterworth himself. He carried it as a term policy for five years for his own (not Tarlton's) benefit. That Butterworth had a right to do. In all of that Tarlton took no part and had no interest. At the end of the five year period, and when the provisions of that original term policy required Butterworth to convert it to a policy of ordinary life, policy 524,437 was issued by agreement between the company and Butterworth. Tarlton had no agency in its issuance. At the time it was issued (March 8,

1935) Tarlton had an insurable interest in Butterworth. He had that insurable interest in Butterworth when he (Tarlton) assigned it. Nothing at all appears in this record to indicate that the arrangement between Butterworth and Tarlton or Tarlton Trust, or any of them, was a wagering contract. The wager life insurance contract rule, which plaintiffs assert has here been violated, applies where a policy has been taken out by, and the premiums paid by, a person who has no insurable interest in the life of the insured, or when it has been assigned for speculative purposes, as in Hoffman v. Hoke, 122 Pa. St. 377. It is not claimed that the parties to the assignment of February 10, 1936, had any design or intention to circumvent the law. It is merely asserted that Tarlton Trust had no insurable interest. The bona fides of that assignment is not questioned. The wager life insurance contract rule does not apply to facts such as are presented here where the original contract was made in good faith by the insured with the insurer, and in which the beneficiary took no part at all. In the instant case the good faith of all parties. appears throughout the entire transaction, from the issuance of the policy in the first instance in 1930, and that good faith continued throughout Butterworth's life.

The assignment by Tarlton in 1936, upon the insurer's printed form, was made by Tarlton after consultation with and advice of his counsel, and in the office and presence of a Vice-President of the Trust Company. It was signed, sworn to, acknowledged and witnessed. The assignment to Tarlton Trust was an open above-board transaction and bears every earmark of good faith. It appears that Tarlton merely transferred the legal title to a chose in action to his alter ego, his trustees, so that this asset to which he had unquestioned and unquestionable title could be administered as a part of his estate plan. The transaction was wholly free from speculative purposes. McFarland, Admr. v. Creath, 35 Mo. App. 112. After the assignment the insured lived eleven years and died a natural death at the age of 67.

In discussing the interest and conditions which take a policy out of the category of a mere wager, the United States Supreme Court, in Connecticut Mutual Life Insurance Co. v. Schaefer, supra, in part, said: ''The essential thing is that the policy shall be *obtained in good faith,* and not for the purpose of speculating upon the hazard of a life in which the insured (beneficiary?) has no interest. * * * We do not hesitate to say, however, that a policy taken out in good faith, and valid at its inception, is not avoided by the cessation of the insurable interest, unless such be the necessary effect of the provisions of the policy itself * * * But supposing a fair and proper insurable interest, of whatever kind, to exist at the time of taking out the policy, and that it be taken out in good faith, the object and purpose of the rule which condemns wager policies is sufficiently

attained; and there is then no good reason why the contract should not be carried out according to its terms''. The reasoning of that case was followed by this court in Bowers v. Missouri Mutual Association, 62 S. W. (2d) 1058. See also, Alexander v. Griffith Brokerage Co., supra.

The contract of insurance is before us. It is not a contract of indemnity for actual loss. It is but a definite promise to pay a certain definite sum on the happening of a future event. Here Butterworth alone and in good faith negotiated the contract with the insurer. It was his personal property. He had a right to have Tarlton made the beneficiary, as creditor. He had a right to assign, sell or give it to Tarlton as he could any other personal property. Butterworth had good reasons for desiring to dispose of it. The policy was at least a portion of the consideration whereby he discharged his indebtedness to Tarlton. Butterworth had a right to so use it. He could do what he pleased with his own and, too, Tarlton had an insurable interest in Butterworth. Could Tarlton lawfully assign the policy to Tarlton Trust? It is our conclusion that he could.

It has been broadly stated, and sometimes without qualification, that it is a general rule of substantive law that ''an assignment of a life insurance policy to one who has no insurable interest in the life insured is void.'' But research into that doctrine and the reasons sometimes advanced for it demonstrates that such broad and unqualified statement of legal principle is both inaccurate and misleading. The last above quoted language cannot apply to all assignments in which the assignee had no interest in the life insured but must be limited to only such assignments as are found or appear to be gaming transactions. The fact, of itself and without more, that Tarlton Trust had no insurable interest in Butterworth could not void the assignment, but such fact may be a circumstance to be considered in determining the character and good faith of the transaction, but it is in no wise conclusive of illegality. There is some difference of opinion. But the prevailing view, and the greater weight of authority and the better and more soundly reasoned conclusions of the courts was tersely expressed by Mr. Justice Holmes in Grigsby v. Russell, 222 U. S. 149, 32 S. Ct. 58, 56 L. Ed. 133, wherein, in ruling this precise question, he said, in part: ''And cases in which a person having an interest lends himself to one without any, as a cloak to what is, in its inception a wager, have no similarity to those where an honest contract is sold in good faith.'' The principle of the good faith of the assignment transaction runs like a scarlet thread through the better reasoned cases. The decided trend of adjudications unquestionably is to establish the rule that an insurable interest in the insured by the assignee of a policy of life insurance is not essential to the validity of the assignment if the party to whom it was issued in good faith had an insurable interest, and if the assignment was in good

faith and not made to cover up· a gambling transaction. We unequivocally approve that rule.

In Minnesota Mutual Life Ins. Co. v. Manthei, (Mo. App.) 189 S. W. (2d) 144, in discussing the assignment of a life insurance policy where it was contended the assignee had no insurable interest, Judge Bennick said, in part: "Where a policy is assigned in good faith and without any intention that the assignment is to be used as a cloak for a mere wager or .gambling transaction, the assignment is not against public policy," etc. See also, Lyman v. Jacobsen, 128 Or.· 567, 275 Pac. 612, 73 A. L. R. 1028, Chamberlain v. Butler, 61 Neb. 730, 86 N. W. 481, Gordon v. Ware National Bank, 132 Fed. 444, Hammers v. Prudential Life Ins. Co., (Tenn.) 216 S. W. (2d) 703, Bray v. Malcolm, (Ga.) 22 S. E. (2d) 126, Oleska· v. Kotur, (Ind.) 48 N. E. (2d) 88, Prudential Life Ins. Co. v. Corriveau, (N. H.) 168 Atl. 569, Peel v. Reibel, (Minn.) 286 N. W. 345, Travelers Ins. Co. v. Morris, 115 N. J. Eq. 142, In re Estate of Szymanski, 109 Pa. Super. Ct. 555, Murphy v. Red, 64 Miss. 614, 1 Sou. 761, Fitzpatrick v. Hartford Life and Annuity Ins. Co., 56 Conn. 116, 13 Atl. 673, Clark v. Allen, 11 R. I. 439, Mutual Life Ins. Co. v. Allen, 138 Mass. 24, May on Insurance, Vol. 2, (4th Ed.) § 398, p. 886, Life Insurance Law of Assignments, Hine and Nichols, pp. 70 to 90, Annotation, 73 A. L. R. 1036, and 44 C. J. S., Insurance § 201, p. 898. Only five states are found to hold a contrary view.

It is apparent that the cases heretofore decided by our Courts of Appeals, Heusner v. Mutual Life Ins. Co., 47 Mo. App. 336, Tripp v. Mutual Life Ins. Co., et al, 177 Mo. App. 339, Bruer v. Kansas Mutual Life Ins. Co., 100 Mo. App. 540 and Schneider, et al. v. Kohler, 201 S. W. (2d) 499, which seem to unqualifiedly announce the rule that "an assignment of a life insurance policy to one who has no insurable interest in the life insured is void" should all be considered in the light of the facts of those cases. The Heusner and Bruer cases seem to present transactions where there were pure wagers upon the life of the insured. The Tripp case was clearly one of fraudulent representations. None of those cases presented facts such as we have here and in none of them was the question of good faith raised or considered. And insofar as they may announce any rule contrary to the conclusion herein reached they should no longer be followed.

Without the power of assignment life insurance contracts would lose much of .their value. In a commercial age and with a commercial people, and in recognition of commercial practices, the courts are not unaware of the frequent necessity for the transfer by assignment of such contracts in the usual course of every day business. To limit the assignment of such contracts otherwise valid to those having an insurable interest; and to thus ignore the bona fides of assignments of convenience or necessity, would not only impair the value of such contracts as a plan of estate building and economic protection but

would work unconscionable injury to policyholders who are no longer financially able to or who no longer desire to continue such contracts.

From this record it is clear that the assignment of the policy to Tarlton Trust was made in the utmost good faith and there is no reason whatever under this evidence to hold that such assignment was a mere cloak to cover a gambling transaction. That being true we must rule the contention made by plaintiffs to be without merit. In view of our conclusions above stated, the question of whether the claim of plaintiffs was a stale one and whether there was laches in not presenting it until 1948 need not be discussed.

In light of the facts and circumstances of record here, and giving due deference to the decree of the chancellor, no reason has been pointed out, and we find none which would warrant our interference with the judgment from which this appeal was taken. The judgment and decree entered below is accordingly affirmed. It is so ordered. All concur.