**Don LOWE, Plaintiff–Respondent,**

v.

**Ruth RENNERT, Individually and as Executrix of the Estate of Stanley Rennert, deceased, Martin Rennert, and Yvonne Guttman, Defendants–Appellants,**

and

**Prudential Insurance Company of America and Jackson National Life Insurance Company, Defendants.**

No. 18208.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 6, 1993.

Motion for Rehearing or Transfer
Denied Dec. 28, 1993.

Application to Transfer Denied
Feb. 22, 1994.

Craig A. Smith, Daniel, Clampett, Lilley, Dalton, Powell & Cunningham, Springfield, for defendants-appellants.

James R. Robison, Sikeston, for plaintiff-respondent.

FLANIGAN, Presiding Judge.

"It's to plaintiff Lowe's detriment to be insured by people that he has, rightly or wrongly, some physical fear of," said plaintiff's attorney, James R. Robison, during his opening statement to the trial judge. The events which gave rise to that remark are bizarre and perhaps unique.

Plaintiff Don Lowe brought this action against defendants Ruth Rennert, individually and as Executrix of the Estate of Stanley Rennert, deceased, Martin Rennert, Yvonne Guttman, Prudential Insurance Company of America, and Jackson National Life Insurance Company. The three individual defendants are the children of Stanley Rennert, deceased, and they are the beneficiaries and owners of two life insurance policies issued by Prudential and one life insurance policy issued by Jackson National. Plaintiff Lowe is the insured in each policy.

Lowe's petition sought a mandatory injunction compelling the defendants to cancel the three policies and a declaratory judgment that none of the individual defendants or the Estate of Stanley Rennert had any insurable interest in Lowe's life.

The petition alleged the matters set forth in the following five paragraphs:

Lowe at one time was "obligated to make certain payments" to the late Stanley Rennert and, upon the death of Stanley Rennert, that obligation became an asset of his estate.

At the request of Stanley Rennert, Lowe consented to have Jackson National issue a policy of life insurance, in the amount of $235,000, on the life of Lowe "as collateral security." After the death of Stanley Rennert, Ruth Rennert requested Lowe to consent to the issuance by Prudential of a policy on Lowe's life to replace the Jackson National policy. Lowe agreed to apply for a Prudential policy to serve as collateral security on the debt Lowe owed Stanley Rennert, pending negotiations for settlement of a lawsuit in Scott County, Case CV 381–202CC, in which Ruth Rennert, as executrix of her father's estate, was plaintiff and Lowe and his wife were defendants.

Ruth Rennert failed to cancel the Jackson National policy but instead arranged to have the Jackson National policy transferred to the ownership of the three individual defendants. The application for the Prudential policy was conditioned upon cancellation of the Jackson National policy. Ruth Rennert utilized Lowe's application to obtain a Prudential policy on the life of Lowe.

In the fall of 1984, the parties in Case CV 381–202CC entered into a stipulation by which Lowe was to pay to Ruth Rennert "certain monies" [$96,000 plus interest] in installments in full satisfaction of Lowe's obligation to the late Stanley Rennert which was the subject matter of Case CV 381–202CC. Lowe paid the installments when due, and Case CV 381–202CC was dismissed with prejudice, thereby eliminating Lowe's obligation to Stanley Rennert. After that dismissal, neither the individual defendants nor the Estate of Stanley Rennert had any insurable interest in the life of Lowe, nor any right, contractual or otherwise, to continue to maintain insurance on Lowe's life.

Although the cancellation of the Jackson National policy was an express condition of Lowe's agreement to allow the estate to obtain the Prudential policy, Ruth Rennert continued to maintain in force insurance on Lowe's life with both Prudential and Jackson National and, without Lowe's knowledge or consent, caused the policy to be modified or replaced by other policies, including an additional $250,000 policy [Prudential], taken out by Ruth Rennert subsequent to 1987. The

individual defendants are now the "nominal owners" of insurance on the life of Lowe in the amount of at least $685,000. The insurance was issued solely as security for a debt which no longer exists.

The policies of life insurance are contrary to public policy and are void. Lowe was never a debtor of the individual defendants and all of his indebtedness to the estate of their father was extinguished by compliance with the stipulation for settlement of Case CV 381–202CC. Defendant's efforts to maintain insurance on the life of Lowe is an effort to gamble on Lowe's life and should be declared void as against public policy. By failing to cancel the insurance, Ruth Rennert is in violation of the settlement agreement of Case CV 381–202CC.

The executrix and the three individual defendants filed a joint answer, containing certain admissions and denials. The answer also alleged the matters set forth in the following three paragraphs:

Stanley Rennert obtained a $235,000 life insurance policy from Jackson National on Lowe's life, but the policy was not issued as collateral security. At all times, Stanley Rennert and his estate or heirs have been the owner of the policy and have paid all the premiums. Plaintiff is not the owner or beneficiary and has no interest in the Jackson National policy or the Prudential policy. There were no conditions attached to the issuance of the Prudential policy, and these defendants are the owners and beneficiaries of the Prudential policy and have paid all premiums. Near the time when the Prudential policy was obtained with the consent of Lowe, Lowe owed these defendants over $600,000. On August 26, 1981, Ruth Rennert properly made arrangements to have the ownership of the Jackson National policy changed from Stanley Rennert to the beneficiaries of his estate, and she was not required to cancel the Jackson National policy.

Both before and after the stipulation was filed in Case CV 381–202CC, defendants sought to recover the payment from Lowe, or through life insurance, all sums owed on the original obligation of Lowe to Stanley Rennert plus attorney's fees and insurance premiums incurred by the Estate of Stanley Rennert or the three individual defendants. All of said sums represented an insurable interest when the policies were issued. Lowe consented to the issuance of $400,000 insurance on his life with Prudential as a condition precedent to any settlement of Case CV 381–202CC.

All parties to the settlement were aware of said insurance and consented to the issuance thereof even though the amount of moneys owed was compromised at a lesser sum at a later date. The stipulation for settlement was never released or finalized until said insurance was in force. These defendants do not know of any agreement between them and Lowe requiring cancellation or termination of the policies. Lowe has no interest in the policies.

The defendants filed cross-claims against both insurance companies. After a non-jury trial, the trial court entered judgment in favor of Lowe and against the defendants. The judgment declared that defendants Ruth Rennert, Martin Rennert, and Yvonne Guttman have no further right to maintain life insurance on the life of Lowe, and ordered all defendants to cancel the Jackson National policy ($235,000), Prudential Policy No. 71501839 ($200,000), and Prudential Policy No. 74912164 ($250,000). Any policy funds resulting from cancellation were ordered to be paid to Ruth Rennert, Martin Rennert, and Yvonne Guttman.

With respect to the cross-claims, the trial court found the issues against the individual defendants and in favor of Jackson National and Prudential. The propriety of that ruling has not been challenged. The two insurance companies played neutral roles in the trial court and made no appearance in this court. The appellants are Ruth Rennert, individually and as Executrix of the Estate of Stanley Rennert, deceased, Martin Rennert, and Yvonne Guttman.

In general, appellants contend that the judgment is erroneous because: (1) the insurance policies were valid and not contestable by Lowe because defendants had an insurable interest in Lowe's life when the policies were applied for; (2) Ruth Rennert, as owner of the policies, had the exclusive right

to change the beneficiaries and ownership, and Lowe had no right to contest ownership or beneficiary designations; (3) Lowe's contention that he never agreed to a Prudential policy in the amount of $400,000 has no bearing on the issue of whether defendants had an insurable interest in Lowe's life, and in any event Lowe implicitly authorized defendants to complete the policy application, including the amount, when Lowe signed the blank application; (4) the stipulation between Lowe and Ruth Rennert was a complete and unambiguous embodiment of the parties' settlement agreement, and the parol evidence rule barred any evidence as to any oral contemporaneous agreements which imposed the additional obligation on defendants of cancelling the policies; (5) the equities weigh in favor of defendants retaining ownership of the policies because defendants, and not Lowe, have borne the expenses of obtaining and continuing the policies.

■ On appeal of a civil case tried without a jury, this court must sustain the judgment unless there is no substantial evidence to support it, or it is against the weight of the evidence or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This court defers to the trial court's findings of fact, "given the trial court's superior ability to judge the credibility of witnesses." *Brawley v. McNary*, 811 S.W.2d 362, 365[1] (Mo. banc 1991).

None of the parties invoked Rule 73.-01(a)(2) [1] to request findings of fact, and the trial court made none. That being so, "all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached." Rule 73.01(a)(2). The evidence covered transactions beginning in 1977, and extending over 13 years. Both Lowe and appellants introduced numerous exhibits, primarily documents or correspondence. Before the highlights of the complex facts are set forth, it is proper to keep in mind certain general principles enunciated by Missouri courts with respect to life insurance.

■ In *Lakin v. Postal Life and Casualty Insurance Co.*, 316 S.W.2d 542 (Mo. 1958), the court said, at 552:

There is no question but that it is the general rule in this state that a person has an insurable interest in his own life and may take out a policy of insurance thereon and name as beneficiary a person who has no insurable interest in his life, except when prohibited to do so by statute as is true in insurance policies issued by assessment companies.

At p. 549 the court said:

It has uniformly been held that a person cannot take out a valid and enforceable policy of insurance for his own benefit on the life of a person in which he has no insurable interest; such a policy or contract of insurance is void and unenforceable on the grounds of public policy, it being merely a wagering contract.... It has repeatedly been stated that for one to have an insurable interest in the life of another, there must be a reasonable ground founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit from or advantage from the continuance of the life of the insured.

At p. 551 the court said:

It is well settled that to allow the creditor to procure insurance greatly exceeding the amount of the debt might be to tempt him to bring the debtor's life to an unnatural end, and thus contravene the principle of public policy which has been seen to lie at the very basis of the doctrine of insurable interest, and the only practical working rule would seem to be that when the disproportion between the insurance and the debt is so great, taken with the other circumstances of the case, as to show a want of good faith in the creditor, the policy will be deemed a wager contract, and void.

■ If a policy is taken out in good faith, and is valid at inception, it is not voided by cessation of insurable interest unless the policy says so. *Butterworth v. Mississippi Valley Trust Co.*, 362 Mo. 133, 240 S.W.2d

---

**1.** All references to rules are to Missouri Rules of Court, V.A.M.R., and, except where indicated otherwise, all references to statutes are to RSMo 1986, V.A.M.S.

676, 682 (1951); *Bowers v. Missouri Mut. Ass'n*, 333 Mo. 492, 62 S.W.2d 1058, 1064 (1933). Generally, lack of insurable interest may be pleaded by the insurer and no one else. *Poland v. Fisher's Estate*, 329 S.W.2d 768, 770–771 (Mo.1959).

In *Byrne v. Prudential Ins. Co. of America*, 88 S.W.2d 344 (Mo.1935), the court said, 88 S.W.2d at 346:

> Absent any evidence tending to show that either before or at the time [the insured] consented to the taking of the insurance in his name or subsequent to the making of the application or issuance of the policy had knowledge thereof and either specifically or impliedly ratified same it seems to follow, in such situation, as a matter of law, that no contract was entered into or existed between [the insured] and the insurance company.

In *Sells v. Fireside Life Ass'n*, 66 S.W.2d 955 (Mo.App.1933), the court said, 66 S.W.2d at 956: "Had the evidence conclusively shown that the insurance was taken out and the policy issued without the consent or knowledge of the insured, the policy would most surely have been void as a matter of law."

In *Magers v. Western & Southern Life Insurance Co.*, 344 S.W.2d 312 (Mo.App. 1961), the court cited the foregoing principles enunciated in *Byrne* and *Sells*, and said, 344 S.W.2d at 314[3]: "This is the rule except as to children." [2]

In 1977, Lowe entered into a contract to purchase the New York business of Stanley Rennert, a New York resident. The contract provided that Lowe agreed to cooperate with Stanley Rennert and submit to a medical examination in connection with Rennert's application, at his option, for life insurance upon Lowe's life "for such term as may be covered" by promissory notes given by Lowe as part of the purchase price.

In November 1978, Stanley Rennert's attorney, Vittoria, wrote a letter to Dwayne Lorenz, an agent for Jackson National, enclosing Rennert's check for the first year's premium on the Jackson National policy which was to be issued. The letter stated: "It will be our plan to reduce the amount of insurance on Mr. Lowe's life as, if and when Don Lowe's indebtedness to Mr. Rennert is reduced."

On December 19, 1978, Vittoria sent Lorenz an "agreement," signed by Stanley Rennert, stating: "Upon the full and total payment and satisfaction of the promissory notes of [Lowe and his wife], [Stanley Rennert] agrees to transfer ownership to [Lowe] of an insurance contract issued by [Jackson National] on the life of [Lowe] upon payment of the then cash surrender value of such policy by [Lowe] to [Stanley Rennert]." [3]

On January 12, 1979, the Jackson National Policy No. 106757, in the face amount of $235,000, was issued with Lowe as the insured. Previously Lowe signed the application. The original owner was Stanley Rennert, who died in November 1980. After his death, appellants were named as the owners.

Ruth Rennert, a New York resident, was the daughter of Stanley Rennert. She was also an agent for Prudential. She was active in the management of her father's affairs and served as executrix of his estate. At the trial she was the principal witness for appellants. The other two appellants did not testify.

Originally the beneficiary of the Jackson National policy was designated as the Estate of Lowe. In February 1979, the beneficiary was changed to the Estate of Stanley Rennert. Premiums on the Jackson National

---

**2.** Section 376.531, enacted in 1992 (L.1992, H.B. No. 1574, § A (§ 14), reads:

No life insurance contract upon an individual, except a contract of group life insurance, shall be made or effectuated unless at the time of the making of the contract the individual insured, being competent and of legal capacity to contract, applies therefor or has consented thereto in writing, except in the following cases:

(1) Any person having an insurable interest in the life of a minor, or any person upon whom a minor is dependent for support and maintenance, may effectuate insurance upon the life of, or pertaining to, the minor;

(2) Family policies may be issued insuring any two or more members of a family on an application signed by either parent, stepparent, or by a husband or wife.

**3.** The Jackson National policy is a term insurance policy. It has no cash surrender value.

policy were paid by Stanley Rennert. After his death, they were paid by his estate or by appellants. In August 1981, Ruth Rennert wrote Jackson National and requested forms to make certain changes in the policy. She also stated that she would like to be the agent receiving the commission "regarding this change."

Lowe's default in connection with the payments on the notes resulted in a New York judgment entered September 29, 1980, in favor of Stanley Rennert and against Lowe in the amount of approximately $295,000.

In March 1981, Ruth Rennert, as executrix of the Estate of Stanley Rennert, filed, in the Circuit Court of Scott County, Missouri, a petition for registration of the New York judgment. The Scott County case is No. CV 381–202CC. Ruth Rennert's attorney in that action was Kenneth Dement, who was later succeeded in the same capacity by his son, Kenneth Dement, Jr. Lowe's attorney was Daniel Norton. Kenneth Dement, Jr. and Norton were witnesses in the instant case and neither acted as trial counsel.

On January 1, 1983, judgment was entered in CV 381–202CC in favor of plaintiff and against Lowe and his wife in the amount of approximately $350,000.

Settlement negotiations ensued, and on October 20, 1984, attorneys Dement and Norton, on behalf of their respective clients, signed a stipulation reciting that all controversies between the parties had been settled and that the case be dismissed "as follows." The stipulation then set forth that Lowe would pay plaintiff $96,000 in four installments, plus interest, the first to be made on May 20, 1985, and the final installment to be made on or before December 1987. Upon payment in full, the cause was to be dismissed with prejudice to the plaintiff. The stipulation also provided that if there was a default by Lowe in making the payments, the stipulation would be void. Lowe did not default in making the payments.

The stipulation contains the following provision:

4. Defendant Don Lowe agrees to submit to a medical exam within two years of the signing of this agreement, and further agrees to submit to a medical exam should he become disabled before three years from the date of this agreement; *for the purpose of plaintiff maintaining life insurance upon his life in the principal amount of $100,000.00* and for proposed waiver of premiums of that amount. (Emphasis added.)

The stipulation was not filed until May 22, 1985, after the issuance of the first Prudential policy. The delay was partly due to confusion arising from the fact that Lowe had been a patient at a hospital where another person with the same name had also been a patient. Some of the medical records of that other person caused the confusion which was cleared up.

At the trial, attorney Norton testified that "the understanding upon which the stipulation dated October 20 was based," was that Lowe would, if he wanted to, be able to acquire the Jackson National policy by paying its cash surrender value "or, alternatively, it would be cancelled and there would emerge one insurance policy covering Mr. Lowe's life for $100,000."

Under cross-examination by appellants' counsel, Lowe testified that the stipulation "specifically points out $100,000.... It points out nothing more than that.... I would only agree to one amount, and that was $100,000, and the termination of Jackson National insurance."

On October 22, 1984, Ruth Rennert wrote her attorney, Dement, and enclosed applications for life insurance policies. Two forms were Prudential applications, and the other form was for another insurance company, "in case one company rejects coverage." The letter read, in pertinent part:

Please complete all questions on the Prudential applications that have been highlighted. Mr. Dement, please do not witness or date any application. Send a letter on your letterhead that you asked Mr. Lowe the questions and witnessed his signature. Please call me collect when you receive this so that I may answer any questions you may have regarding the enclosed.

One of the Prudential applications was blank and the other had highlighted portions. Item 6B called for the amount of insurance applied for. Pursuant to Rennert's instructions to Dement, Item 6B was left blank on both Prudential forms since it was not highlighted. Dement obtained Lowe's signature on both Prudential applications and mailed them to Ruth Rennert.

At the trial, Ruth Rennert admitted that the application form for the Prudential policy, under Item 13, contained this question: "Will this insurance replace or change any existing insurance in any company, on any person named in 1a or 10? If yes, give their names, name of company plan, amount, and policy numbers." The question was answered "Yes, Jackson National Life, No. 106757 for $235,000." Ruth Rennert testified that the answer to Item 13 was not in her handwriting but was in the handwriting of her partner, Linda Burmis. She said, "Either someone in my office or I submitted that application to Prudential with the recital that the policy being applied for was to replace an existing Jackson National policy.... the policy written through the Dwayne Lorenz Agency in Sikeston.... There was only one Jackson National policy."

During cross-examination of Ruth Rennert by Lowe's counsel, the following occurred:

Q. Okay. So after you negotiated an agreement with Mr. Lowe for him to apply for Prudential Life Insurance to replace the Jackson National Life, and you accepted the application and you proceeded to obtain the Prudential Life Insurance, then you changed your mind about releasing him from the Jackson National. Isn't that what happened?

A. Yes.

Ruth Rennert also admitted that she did not notify Lowe that she had changed her mind about cancelling the Jackson National policy. She stated that the amount of insurance applied for, Item 6B in the Prudential application, was $400,000, and that the figure

was in the handwriting of her partner. Ruth Rennert also said that she did not have the original Prudential policy. "Unfortunately it was thrown out by some cleaning people in my office." She did not remember whether it was "thrown out" before or after she was asked to produce an exact copy of the policy.

Later in her testimony, Ruth Rennert testified that when she received the Prudential form from attorney Dement, the application form already had the figure $400,000 inserted in it and that she did not receive from Dement any application forms which did not have the dollar amount inserted. On the other hand, Attorney Dement testified that when he mailed the Prudential application to Ruth Rennert, Item 6B was left blank which was, of course, pursuant to her instructions. Dement said, "I never filled in the figure of $400,000," and that no one ever told him there was supposed to be a $400,000 figure. Before Dement mailed the Prudential applications to Ruth Rennert, he made photocopies to keep for his file.

On March 19, 1985, Prudential issued Policy No. 71501839 in the face amount of $400,-000,[4] with Lowe as the insured. The owner was listed as "Ruth Rennert, creditor of the insured, the estate of said creditor." The beneficiaries were listed: "[Appellants], their estate, beneficiaries, creditors of the insured, as their interest may appear, and the balance of the proceeds, if any, to the insured's estate." Later Ruth Rennert had the policy changed, and appellants were named as beneficiaries.

On April 26, 1985, attorney Dement wrote a letter to attorney Norton and referred to "an addendum to the stipulation per our recent conversation." The addendum referred to was paragraph 4, dealing with insurance and set forth above. Dement's letter also said that he understood that Lowe "is as good as insured and that when Ms. Rennert receives a copy of the policy, she will phone me for the go-ahead."

4. At the trial, appellants' witness Christine Roulston, a Prudential employee, testified that the original Prudential policy was issued for $400,-000, and that in 1988 a part of the policy was converted by Ruth Rennert, and "she was able to

get an additional $50,000." The Prudential coverage then totaled $450,000, with $200,000 represented by the original policy and $250,000 represented by a separate Prudential policy.

On May 20, 1985, attorney Dement wrote Ruth Rennert the following letter:

Enclosed please find Mr. Lowe's cashier's check in the amount of $24,000 payable to the Estate of Stanley Rennert and Dement & Dement. Please promptly endorse and return the draft to me so that I can make the appropriate disbursements.... *Also find the stipulation which you have read and are familiar with. Note that in paragraph 4 I added the additional stipulation that Lowe is to submit to a medical examination within two years or if and when he becomes disabled. Further note that to satisfy Don Lowe I stated that the life insurance was $100,000, although it is my information that it is somewhat more....* (Emphasis added.)

On May 22, 1985, the stipulation was filed in Case CV 381–202CC.

On August 7, 1985, Ruth Rennert obtained a Missouri license to transact business as an insurance agent.

On August 19, 1987, attorney Dement wrote Ruth Rennert the following letter:

Don Lowe is in the process of getting together the last installment owed to you pursuant to the settlement agreement. *Don Lowe and his attorney insist that once the money is paid and disbursed that all life insurance policies owned by Ruth Rennert on Don Lowe's life be cancelled.* As a practical matter after the last payment there is no longer an insurable interest in Don Lowe anyway. I don't think Lowe's request is unreasonable. (Emphasis added.)

On August 24, 1987, attorney Norton wrote attorney Dement the following letter:

Enclosed herewith please find cashier's check in the amount of $25,524.78, made payable to Ruth Rennert and your father. *In keeping with our agreement, you will not forward the check until such time as Ruth has given acknowledgment that her life insurance on Don has been terminated.* (Emphasis added.)

On September 3, 1987, attorney Dement filed in Case CV 381–202CC, on behalf of plaintiff, an Acknowledgment and Receipt of Payment in Satisfaction of Judgment and Order. That document reads:

Comes now Plaintiff, Ruth Rennert, Executrix of the Estate of Stanley Rennert, Deceased, by and through her attorney, Kenneth L. Dement, Jr., and herewith acknowledges receipt in full of payment of the Judgment herein ...

On October 2, 1987, by "Certified Mail, Return Receipt Requested," attorney Dement wrote Ruth Rennert the following letter:

As you know I have had the final payment by Don Lowe in my file for about the past six weeks *waiting for you to acknowledge your agreement to drop the life insurance you currently have in effect on Don Lowe. If Lowe's attorney wished to do so, he could have the Court order that all life insurance policies held by you on Don Lowe be cancelled.* I don't want it to come to that. (Emphasis added.)

On October 19, 1987, attorney Dement wrote Ruth Rennert the following letter:

Enclosed you will find cashier's check in the amount of $25,524.78 payable to you as Executrix of your father's estate and to my father. Please [endorse and return the check]. Ruth, I have told Dan Norton that it is my opinion that nothing can be done about the policy of life insurance you hold on Don Lowe's life. I have related to him your expert information that since you had an insurable interest at the time you took the policy out on Don Lowe the life insurance policy can continue irregardless (sic) of the fact that there may no longer be an insurable interest. *As I related to you, apparently Don Lowe is a little jumpy and believes that the next time he goes to New York he is going to get knocked off.* I think his fears are a little silly but that is what he thinks. (Emphasis added.)

The cashier's check dated August 24, 1987, in the amount of $25,524.78 and payable to "Ruth Rennert, Executrix of the Estate of Stanley Rennert, Deceased, and Kenneth L. Dement," was cashed by the payees.

On November 6, 1987, Prudential wrote Ruth Rennert and informed her that Lowe's attorney had requested Prudential to trans-

fer ownership of Policy 71501839 to Lowe or to cancel the policy, "as the indebtedness between you and Mr. Lowe has been resolved by final payment made through your attorney Kenneth L. Dement. A copy of an Acknowledgment and Receipt of Payment in Satisfaction of Judgment and Order has been received from the insured's attorney. Prior to any action on the above contract, our law department has asked that you forward to us any documentation in your possession which would indicate that Mr. Lowe's loan has not been satisfied."

On March 18, 1988, Michael Tiechman, a Prudential employee and a business associate of Ruth Rennert, wrote the law department of Prudential and enclosed a copy of the stipulation of October 20, 1984. Tiechman's letter stated that Lowe signed an application "for an amount in excess of $100,000." The letter also stated:

> It is Mrs. Rennert's position that since she never consented to give up the policy, she has the right to exercise all rights of ownership. Although she, as the policy owner, has never been notified of any restrictions or the reasons therefor, nevertheless restrictions have been placed on the policy. We hope the enclosure will provide the information you need to release the restrictions on the policy.

A copy of the letter was sent to Ruth Rennert.

On April 4, 1988, Jackson National agent Lorenz wrote a letter to Jackson National and sent a copy to attorney Norton. The letter referred to the Jackson National policy and stated:

> The above policy was written to cover a personal obligation to Mr. Stanley Rennert. After Mr. Rennert's death, a reduced negotiated settlement was made with his estate or heirs. The premium is still being paid by the estate or heir and Mr. Lowe is uncomfortable about this. Can you please cancel this policy at once and agree not to reissue to anyone other than the insured. Enclosed is a copy of the deceased policyowner's agreement to transfer ownership back to the insured.

On May 20, 1988, Jackson National wrote a letter to Ruth Rennert, which stated in essence:

> When the [Jackson National] policy was purchased on January 27, 1979, Stanley Rennert was the owner. On August 26, 1981, ownership was changed to [appellants]. The policy was written to cover a personal obligation to Mr. Stanley Rennert. Upon the full and total payment and satisfaction of the notes of [Lowe and wife], Stanley Rennert agreed to transfer ownership of the policy to Lowe. We understand that after Rennert's death a reduced negotiated settlement was made with his estate or heirs. It is necessary for the owners of the policy to submit signed statements which indicate that the personal obligation of [Lowe and wife] has been met to the owners' satisfaction. The statement should be signed by the policy owners and by [Lowe and wife]. We will record this statement releasing Lowe from his obligation upon receipt.

On December 22, 1988, Jackson National agent Lorenz wrote Jackson National concerning the Jackson National policy. The letter reads: "If you would check your records on the above, we thought this policy was terminated a long time ago but all indications show it still in force. Will you please renew your efforts to cancel this policy?"

On January 6, 1989, Jackson National wrote agent Lorenz in response to his letter of December 22, 1988. The letter stated that cancellation could only be authorized by the owner of the policy, Ruth Rennert. "Once we receive a letter from her requesting a cancellation, we will process your request."

On March 9, 1989, Jackson National agent Lorenz wrote Lowe. The letter reads:

> When you asked me if your Jackson National policy was terminated, I told you I thought so as I had a commission charge back. What happened was an error was made and they had overcharged Mrs. Rennert and gave her a refund! Today I got my commission statement and saw that she paid another premium on you. Jackson National says they can not cancel it and recommended you have your attorney enforce the agreement. I sent [attorney

Norton] the information last year so check with him and see what he recommends.

On December 8, 1989, the instant action was filed.

With respect to appellants' contentions enumerated earlier, it is true that Stanley Rennert had an insurable interest in Lowe's life when the Jackson National policy was applied for. The later settlement agreement, reflected by the stipulation, contemplated cancellation of the Jackson National policy. Ruth Rennert breached the settlement agreement by failing to cancel that policy. At least to the extent of $96,000 plus interest, appellants had an insurable interest in Lowe's life when the first Prudential policy was applied for. The application for the Prudential policy, as executed by Ruth Rennert, sought $400,000 coverage. Lowe had consented only to $100,000. The Prudential policy was not obtained with the consent of Lowe.

It is true that the various policies gave the owners the right to change beneficiaries and ownership, but those are merely provisions of the policies which the trial court properly found to be void and subject to cancellation.

There is no factual basis for appellants' contention that Lowe implicitly authorized appellants to complete the policy application showing an amount of $400,000. By the stipulation, Lowe consented to $100,000, a fact repeatedly brought to Ruth Rennert's attention by her own attorney, but to no avail.

Appellants' attempt to rely on the parol evidence rule with respect to the stipulation of October 24, 1984, is inconsistent with their position in the trial court, where they sought to disassociate themselves from that stipulation. In the trial court, appellants' counsel[5] in his opening statement said: "And whatever the stipulation that was filed, the parties didn't abide by it from day one, and never intended to with regards to the provisions pertaining to insurance. They did abide by their agreements on the payments in that stipulation."

Ruth Rennert testified that the stipulation was made without her approval and without her authority and that she told attorney De-ment that he had acted without her authority. That testimony was contrary to the testimony of Dement, who stated that before he signed the stipulation as attorney for Mrs. Rennert, he discussed the language of it with her and she authorized him to execute it on her behalf. Moreover, the cancellation of the Jackson National policy was not inconsistent with the stipulation which called for $100,000 coverage. That figure could not be met unless the Jackson National policy was cancelled.

It is true that the appellants, and not Lowe, have paid the premiums on the various policies, but in so doing they reaped the results of their failure to cancel the Jackson National policy and to limit the Prudential policy to the agreed $100,000 amount.

■ The trial court reasonably could have reached the following findings and conclusions: The Jackson National policy in the face amount of $235,000 was issued to Stanley Rennert with the consent of Lowe; on January 1, 1983, the executrix of Stanley Rennert's estate obtained a judgment against Lowe in the amount of $350,000; settlement negotiations culminated in the execution of the stipulation of October 20, 1984; all controversies between the parties were settled on the basis that Lowe would pay $96,000 to the estate in four installments, which were duly made; to secure $96,000 indebtedness, Lowe consented to the estate maintaining life insurance on his life in the amount of $100,000; the agreement of the parties was that the Jackson National policy would be cancelled and replaced by a Prudential policy in the amount of $100,000; instead of obtaining a $100,000 Prudential policy, Ruth Rennert obtained a $400,000 Prudential policy, and she did not cancel the Jackson National policy; the $400,000 policy was not obtained with Lowe's consent; the $400,000 Prudential policy [later increased to $450,000], coupled with the uncancelled Jackson National policy [$235,000], greatly exceeds the amount of the $96,000 debt which was later paid; the disproportion between the insurance and the debt is so great, taken with the other circumstances of the case, as to show a want of good

---

5. Appellants' counsel in this court did not repre- sent them in the trial court.

faith in the creditor; the outstanding policies collectively are deemed a wager contract, and void.

This court holds that the judgment of the trial court is supported by substantial evidence, that it is not against the weight of the evidence, and that it neither declares nor applies the law erroneously.

The judgment is affirmed.

PREWITT and GARRISON, JJ., concur.